D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR" or "Plaintiff") seek processing and release of agency records requested from Defendant, the Federal Bureau of Investigation ("FBI").

2. In November 2015, Plaintiff submitted a Freedom of Information Act request (the "Request") through its reporter Jonathan Jones to the FBI seeking records about the murders of two American citizens in Indonesia in 2002, including records relating to an Indonesian citizen connected to the attack who was sentenced to life imprisonment in Indonesia.

3. In January 2016, the FBI requested proof of death for the two American citizens.

Plaintiffs immediately provided proof of death, including an FBI press release on the killing. An FBI public liaison confirmed receipt of Plaintiff's correspondence.

4. In December 2018, Plaintiff contacted the FBI to follow up on the status of the request. The FBI responded that the request was closed because the agency had not received the proof of death as requested. After Plaintiff provided correspondence confirming they had provided in 2016, the FBI reopened the request.

5. In February 2019, the FBI sent a letter confirming the existence of responsive records but rejecting Plaintiffs' request under FOIA Exemption 7(A). The denial letter also invoked FOIA Exemption 7(E), and Privacy Act Exemption (j)(2) to neither confirm nor deny "the existence of your subject's name on any watch lists."

6. Plaintiff' appealed the FBI's rejection of the request in March 2019.

7. On July 29, 2019, the Department of Justice ("DOJ"), Office of Information Policy ("OIP") rejected Plaintiff's appeal on modified grounds. OIP affirmed the FBI's withholding of records under FOIA Exemption 7(A) and refusal to confirm or deny the existence of certain records under FOIA Exemption 7(E), and further asserted that certain records could be withheld under FOIA Exemption 7(C).

8. To date, Defendant has failed to comply with FOIA's statutory deadlines and has improperly withheld records responsive to the Request.

9. The requested records are of significant public interest because of historical questions about the alleged roles of the Indonesian military in the killings and the U.S. government in the subsequent murder trial. *See* S. Eben Kirksey and Andreas Harsono, *Criminal collaborations? Antonius Wamang and the Indonesian military in Timika*, 16 South East Asia Research 165 (2008) (discussing whether Indonesian military agents helped stage the attack and whether Bush Administration officials covered up evidence of military involvement to further objectives in the war on terror).

10. Claims that the requested records are exempt under FOIA's Exemption 7(A) as law enforcement records the disclosure of which could reasonably be expected to interfere with enforcement proceedings is unjustifiable under any definition of the law.

-2-

11. Claims that the requested records are exempt under FOIA's Exemption 7(C) as law enforcement records the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy is unjustifiable under any definition of the law.

12. Claims that the fact of the existence of the requested records is protected under FOIA's Exemption 7(E) as law enforcement records the release of which would disclose techniques, procedures, or guidelines for law enforcement investigations or prosecutions is unjustifiable under any definition of the law.

13. Plaintiff now asks the Court for an injunction requiring the FBI to promptly release the withheld records.

## JURISDICTION

14. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

15. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

16. Assignment to the Oakland Division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff's principal place of business is located and most actions in this case occurred.

## PARTIES

17. Plaintiff CIR publishes *Reveal*, an online news site at revealnews.org, and *Reveal*, a weekly public radio show and podcast with approximately 1 million listeners a week. Founded in 1977 as the nation's first nonprofit investigative news organization, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

18. Defendant FBI is a component of DOJ, a department of the executive branch of the U.S. government and an "agency" within the meaning of 5 U.S.C. §552(f)(1). The FBI has its

headquarters in Washington, D.C., and offices in Oakland and San Francisco, California.

## FACTUAL BACKGROUND

### The Tembagapura attack and Anthonius Wamang

19.  Seventeen years ago, on August 31, 2002, two American schoolteachers were killed in a deadly attack near Tembagapura in Papua, Indonesia. *See* Author Name Redacted, *Papua, Indonesia: Issues for Congress*, Congressional Research Service, Jan. 19, 2006, https://bit.ly/2Ch3KXV. Following the attack, the FBI opened a joint investigation with the Indonesian National Police. *See* FBI, *Press Release: Papuan Separatist Charged with the Murders of Others During 2002 Ambush in Indonesia*, June 24, 2004, https://bit.ly/2TKVlpy.

20.  Preliminary investigations by the United States indicated that Indonesian soldiers were involved in the killing. A senior official in the Bush administration told the New York Times there was "no question there was military involvement." *See* Raymond Bonnerjan, *U.S. Links Indonesian Troops to Deaths of 2 Americans*, N.Y. Times, Jan. 30, 2003, https://www.nytimes.com/2003/01/30/world/us-links-indonesian-troops-to-deaths-of-2-americans.html.

21.  In June 2004, a federal grand jury in Washington, D.C., indicted Anthonius Wamang, an Indonesian citizen and Papuan separatist fighter for the murders of the two U.S. citizens. *See* FBI, *Press Release: Papuan Separatist Charged with the Murders of Others During 2002 Ambush in Indonesia*, June 24, 2004, https://bit.ly/2TKVlpy.

22.  In 2006, after Wamang and other suspects surrendered themselves to the FBI, the agency handed them over to Indonesian authorities. *See* Ellen Nakashima, *FBI Said Involved in Arrest of 8 Indonesians*, Wash. Post, Jan. 14, 2006.

23.  The case resolved with Wamang being sentenced to life imprisonment in Indonesia. *See* Achmad Sukarsono, *Papuans jailed for murder of Americans, Indonesian*, REUTERS, Jan. 19, 2007, https://www.reuters.com/article/us-indonesia-papua/papuans-jailed-for-murder-of-americans-indonesian-idUSJAK468520061107.

24. Upon the conclusion of the Wamang trial, the Bush Administration "signaled a new era of military co-operation" with Indonesia. *See* S. Eben Kirksey, *Freedom from Entangled Worlds* 170, n.138 (2012). Following the sentencing, FBI agents and the Department of Justice made no request to extradite Wamang or the other suspects to face trial in the United States. In a U.S. State Department wire, the Administration recognized the finality and outcome of the case. *See* U.S. Dept of State, *Cable: Jakarta High Court Upholds Verdicts in Timika Case*, March 28, 2007.

25. The public's historical interest in the records about the 2002 attack is incontrovertible since the incident is said to be tied to subsequent United States military actions as well as possible international government misconduct. In March of 2004, a member of Congress introduced an amendment that would restrict military funding for the Indonesian military until "a thorough investigation [was] conducted." 150 Cong. Rec. 33 (daily ed. March 16, 2004) (statement of Rep. Hefley). State Department documents declassified in 2009 shed additional light and suggested the involvement of Susilo Bambang Yudhoyono, who was president of Indonesia from 2004 to 2014. *See* Democracy Now, *Declassified Docs Implicate Indonesian President Yudhoyono in Cover-Up of 2002 Murders of American Teachers in West Papua*, July 8, 2009, https://www.democracynow.org/2009/7/8/declassified_docs_implicate_indonesian_president_yudhoyono.

26. Various news outlets have devoted considerable coverage to the 2002 attack in Tembagapura. *See, e.g.*, Dana Priest, *A Nightmare, and a Mystery, in the Jungle*, Wash. Post, June 22, 2003, https://www.washingtonpost.com/archive/politics/2003/06/22/a-nightmare-and-a-mystery-in-the-jungle/3192c410-8f80-43c0-8d6e-27c60ddfc98a/?utm_term=.2846dd23108e.

27. Release of the requested records would continue to inform the public on this important topic of public concern.

### The FOIA Request

28. On November 30, 2015, Mr. Jones submitted a request (hereinafter "the Request") on behalf of CIR via email for all records involving the August 2002 attack in Tembagapura. A true and correct copy of the Request is attached as Exhibit A.

29. Specifically, Mr. Jones requested:

- all records, files, interviews, reports, memos, letter, emails, and documents concerning the death of two American citizens, Ricky Lynn Spier and Leon Edwin "Ted" Burgon after an attack that occurred on August 31, 2002, when 10 schoolteachers and a 6-year-old child were ambushed while they were returning from a picnic to their residences in Tembagapura, Papua Province, Indonesia, including but not limited to all records in the central records system, field offices, investigative case management, electronic case files, and/or universal index of cases;
- all records relating to the Indonesian citizen, Anthonius Wamang, in connection to the attack on August 31, 2002 as referenced above.

*Id.*

30. Mr. Jones requested sought a waiver of applicable fees and indicated that he was a journalist. *Id.*

31. On January 4, 2016, a representative of the FBI responded to the request, stating that proof of death was required to move forward with the request. A true and correct copy of an email from the FBI to Mr. Jones discussing this request for proof of death is attached as Exhibit B.

32. On Friday, January 8, 2016, Mr. Jones sent documentation by email to the FBI of proof of death, including an FBI press release on the killing. A true and correct copy of that correspondence is attached as Exhibit C. Mr. Jones asked for confirmation from the FBI and for any additional guidance on how best to proceed. *Id.*

33. That same day, a public liaison for the FBI confirmed receipt. A true and correct copy of that email correspondence is attached as Exhibit D.

34. On December 3, 2018, more than two years after filing the original request, Mr. Jones emailed and called to follow up on the status of his request. A true and correct copy of that correspondence is attached as Exhibit E. The FBI responded that same day, stating that the request had been closed because they had not received proof of death. *Id.* Jones responded that he had contacted the agency in a timely manner and respectfully requested that the original request be

reopened. *Id.* In addition, Jones attached a PDF file of the entire correspondence as proof. *Id.* On December 7, 2018, the agency stated the request "will be re-opened." *Id.*

35. On February 12, 2019, the FBI sent a final determination letter (hereinafter "the Denial") stating that "[t]he material you requested is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A)." A true and correct copy of the Denial is attached as Exhibit F.

36. The Denial further states, "[t]he records responsive to your request are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceeds. Therefore, your request is being administratively closed." *Id.*

37. The Denial continued "pursuant to FOIA exemption (b)(7)(E)/Privacy Act exemption (j)(2) [5 U.S.C. § 552(b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists." *Id.*

**The Administrative Appeal**

38. On March 11, 2019, CIR sent an administrative appeal letter to DOJ. A true and correct copy of that letter without attachments is attached as Exhibit G.

39. The appeal letter stated that withholding the requested records is improper because the FBI failed to provide a sufficiently detailed justification. *Id.* It explained that the FBI incorrectly asserted a Glomar response. *Id.* It explained that the FBI failed to justify withholding the records under Exemption 7(A) since the agency provided only a conclusory statement to show potential interference with law enforcement proceedings and since the case is nearly two decades old. *Id.* The letter also argued that the agency failed to release and redact segregable portions of the records, as required by the FOIA. *Id.* Finally, it argued that, as a threshold matter, Exemption 7 is inapplicable since the U.S. did not engage in any law enforcement actions or extradite the suspects. *Id.*

40. On July 29, 2019, DOJ Office of Information Policy ("OIP") rejected Plaintiffs' appeal. A true and correct copy of OIP's letter is attached as Exhibit H. OIP affirmed FBI's denial of Plaintiffs' FOIA on "partly modified grounds," determining the FBI "properly withheld this

information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision." *Id.* With regard to Plaintiffs' request for records concerning Anthonius Wamang, OIP determined that, "to the extent that non-public responsive records exist, disclosure of law enforcement records concerning a third-party individual could reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C). *Id.* OIP wrote, "Because any non-public records responsive to your request would be categorically exempt from disclosure, the FBI may properly assert Exemption 7(C) and is not required to conduct a search for the requested records." *Id.* Finally, OIP determined the FBI "properly refused to confirm or deny the existence of any [record that would either confirm or deny an individual's placement on any government watch list] because their existence is protected from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E)." *Id.*

41. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

42. Plaintiffs repeat and reallege paragraphs 1–41.

43. The FBI is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in their possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

44. The FBI has no lawful basis for declining to release the records requested by Plaintiffs under FOIA.

45. The FBI has administratively denied Plaintiffs' request and appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

46. Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested records.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs prays that this Court:

1. Declare that Defendant FBI violated FOIA by failing to provide requested records in response to Plaintiffs' FOIA request;

2. Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3. Order Defendant FBI to provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: August 2, 2019

Respectfully submitted,

By: /s/
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs