1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  JEVECHIUS D. BERNARDONI (CABN 281892)
   Assistant United States Attorney
4

5  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
6          Telephone:  (415) 436-7164
           Facsimile:  (415) 436-7234
7          jevechius.bernardoni@usdoj.gov

8  Attorneys for Defendant
9  FEDERAL BUREAU OF INVESTIGATION

10

11 D. Victoria Baranetsky (SBN 311892)
   THE CENTER FOR INVESTIGATIVE REPORTING
12 1400 65th St., Suite 200
   Emeryville, CA 94608
13 Telephone: (510) 982-2890
   Fax: (510) 849-6141
14 vbaranetsky@revealnews.org

15 Attorney for Plaintiff
16 THE CENTER FOR INVESTIGATIVE REPORTING

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19               SAN FRANCISCO DIVISION

20

| | |
|---|---|
| 21  THE CENTER FOR INVESTIGATIVE REPORTING, | Case No. 19-cv-4541 LB |
| 22 | **JOINT CASE MANAGEMENT STATEMENT** |
| 23          Plaintiff, | |
| 24     v. | Date:  November 7, 2019<br>Time:  9:30 a.m.<br>Place:  Courtroom B, 15th Floor |
| 25  FEDERAL BUREAU OF INVESTIGATION, | |
| 26          Defendant. | **Hon. Laurel Beeler** |

27

28        Plaintiff, The Center for Investigative Reporting ("CIR" or "Plaintiff"), and defendant, the Federal

Bureau of Investigation ("Defendant" or "FBI"), jointly submit this Joint Case Management Statement.

## 1. Jurisdiction and Service

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Defendant has been served and has answered the complaint. ECF No. 9. No issues exist regarding personal jurisdiction, service, or venue.[1]

## 2. Facts

### a. The FOIA Request

Plaintiff has sued the FBI for alleged violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff asserts that—nearly four years ago—on November 30, 2015, Mr. Jonathan Jones, on behalf of The Center for Investigative Reporting, submitted a request to the FBI under FOIA. The FOIA request sought records relating to an August 31, 2002 attack in Indonesia, and Plaintiff asserts that these records involve a matter of grave public interest.

Specifically, the FOIA request to the FBI sought:

- all records, files, interviews, reports, memos, letter, emails, and documents concerning the death of two American citizens, Ricky Lynn Spier and Leon Edwin "Ted" Burgon, after

---

[1] As noted in the FBI's Answer, Defendant alleges the FBI is not a proper party to this case. *See* ECF No. 9 ¶ 18. Similarly, the FBI notes that it is not clear that Mr. Jonathan Jones submitted the FOIA request on behalf of The Center for Investigative Reporting because the FOIA request at issue expressly states that Mr. Jones is a "freelance journalist" and the return address on the FOIA request is not CIR's headquarters. *See* ECF No. 1-2 at p.1. Therefore, The Center for Investigative Reporting may not be a proper party in this case. *See, e.g., SAE Prods. v. FBI*, 589 F. Supp. 2d 76, 79-82 (D.D.C. 2008) (dismissing FOIA claim on basis that plaintiff lacked standing to pursue judicial review because individual who made FOIA requests did not clearly indicate that he was doing so on behalf of plaintiff corporation). In the interests of efficiency, the FBI has not moved to dismiss on either of these grounds as they likely could be cured, if necessary, by amendment.

Plaintiff contends that Defendant FBI is a component of the U.S. Department of Justice, which is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) and therefore is a proper party to this case. Indeed, the FBI is often a named defendant in FOIA cases. *See, e.g., Hidalgo v. FBI*, 344 F.3d 1256 (D.C. Cir. 2003); *EPIC v. FBI*, 235 F. Supp. 3d 207 (D.D.C. 2017); *ACLU of N. Cal. v. FBI*, 16-15178 (9th Cir. 2018). Plaintiff similarly asserts that Jonathan Jones who was a freelance reporter and pitched this story to CIR, is now an employee of CIR. *See Staff: Jonathan Jones*, REVEAL, https://www.revealnews.org/author/jonathan-jones/. News organizations are often listed as the named Plaintiff in FOIA cases even where its journalists have submitted the FOIA requests. *See, e.g., Cable News Network, Inc. v. FBI*, No. 1:2017-cv-1167 (D.C. 2018); *N.Y. Times Co. v. Central Intelligence Agency*, No. 1:2017-cv-06354 (S.D.N.Y. 2018). Moreover, Defendant never raised this issue in its denial of CIR's appeal letter (written on CIR letterhead) and therefore waived this argument. However, should the Court disagree, Plaintiff can expeditiously submit a motion to amend the caption.

an attack that occurred on August 31, 2002, when 10 schoolteachers and a 6-year-old child were ambushed while they were returning from a picnic to their residences in Tembagapura, Papua Province, Indonesia, including but not limited to all records in the central records system, field offices, investigative case management, electronic case files, and/or universal index of cases;

- all records relating to the Indonesian citizen, Anthonius Wamang, in connection to the attack on August 31, 2002 as referenced above.

On January 4, 2016, a representative of the FBI responded to the request, stating that proof of death was required to move forward with the request. ECF No. 1. Mr. Jones responded that same day with some information. *Id.* Two years later, Mr. Jones contacted the agency about the request, and the agency stated that the case was closed. *Id.* Mr. Jones responded that same day with a copy of his previous correspondence and attached additional death records, and the FBI subsequently re-opened the case. *Id.* On February 12, 2019, the FBI sent a final determination letter denying the requested records. *Id.* On March 11, 2019, CIR sent an administrative appeal letter to Defendant. *Id.* On July 29, 2019, the Defendant rejected Plaintiff's appeal. *Id.* Plaintiff filed its complaint on August 5, 2019. *Id.*

### b. The FBI's Progress to Date

The FBI has not released records as of this date. The FBI asserts that it has collected all of the material potentially responsive to Plaintiff's request. *See* Declaration of Michael Seidel ("Seidel Decl.") attached hereto as Ex. A at ¶ 5. Specifically, the FBI's Los Angeles Field Office gathered the file parts and delivered them to the FBI's Record/Information Dissemination Section ("RIDS"). *Id.* The FBI's Information Management Division ("IMD") is currently in the process of deconstructing the file parts, digitally converting the paper records, uploading the file parts into the FOIA Document Processing System ("FDPS"), and uploading media records (audio and video) into a separate system where that material can also be processed. *Id.* ¶ 6. The file and its subparts are large, approximately eight boxes consisting of 92 file sections, including a considerable amount of media, which requires additional time to convert and upload. *Id.* Further, many of the records are classified, some at the Top Secret ("TS") level, and the records also contain special compartment information ("SCI"). *Id.* ¶ 7. National Security investigation records, such as those at issue in Plaintiff's request, require an additional layer of review to determine (1) the full scope of classified information within the records; and (2) if the original classification

1   determinations on documents marked as classified remain appropriate pursuant to the current Executive

2   Order ("E.O.") governing the classification of government information (E.O. 13526).  *Id.*  TS and SCI

3   material requires additional special handling as most RIDS' systems (including FDPS) are not cleared to

4   handle TS or SCI material.  *Id.*  This type of material requires separate processing within a Special

5   Compartmented Information Facility ("SCIF") and often must be reviewed in paper.  *Id.*  IMD expects to

6   complete the digital conversions and upload all parts (including media) into its processing systems by

7   approximately November 20, 2019.  *Id.* ¶ 8.  Once the records have been uploaded, RIDS will then be

8   able to review the records for classified information and begin reviewing the records for the application

9   of pertinent FOIA exemptions and/or potential release.  *Id.*

10      Plaintiff contends that the considerable delay in this case is particularly injurious where the

11   Plaintiff submitted its request nearly four years ago and the records shed light on a historical topic of

12   public interest.  *See* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agencies to respond to FOIA requests within

13   twenty (20) days).  Plaintiff submitted its FOIA request in 2015.  *See* Plaintiff's Complaint, ECF No. 1,

14   ¶ 2.  The agency has not produced any records or concluded its search, which appears to have begun only

15   after Plaintiff filed its complaint. This continued delay gravely impacts not just Plaintiff but the public,

16   which is served by Plaintiff's reporting on government records.  *See Grove Fresh Distribs., Inc. v.*

17   *Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994), *superseded by Rule on other grounds as stated in*

18   *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009) (holding "The newsworthiness of a particular

19   story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may

20   have the same result as complete suppression.").  While Plaintiff understands additional layers of review

21   may be required to meet the November 20, 2019 date of completion of uploading records, any further

22   delay should be minimized to diminish additional harm to the public.

23      **3.    Legal Issues**

24      Before Defendant completes its production, the legal issue is whether FOIA permits bifurcation.

25   After Defendant completes its production, the legal issues may be (i) whether Defendant conducted an

26   adequate search; and (ii) whether any withholdings were properly made pursuant to an applicable FOIA

27   exemption.

28

### 4.   **Motions**

There are no prior motions.  As discussed above, FBI has not yet disclosed any records or completed processing of the FOIA request.  After the FOIA request has been processed, the parties anticipate that this case will be resolved at summary judgment.

**FBI's position:**

The FBI anticipates bringing a motion to bifurcate these proceedings, so the parties can litigate the FBI's Exemption 7(A) withholdings first while preserving all other exemptions for later resolution, if necessary.  Here, the FBI will release all publicly available information responsive to the FOIA request, but the FBI plans to rely on Exemption 7(A) to categorically withhold non-public documents from release.[2]  Seidel Decl. ¶ 9; *see* 5 U.S.C. § 552(b)(7)(A) (allowing the withholding of records compiled for law enforcement purposes, the release of which "could reasonably be expected to interfere with enforcement proceedings"); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978) (allowing categorical application for Exemption 7(A)).  Defendant notes that the "general rule" is that the government "must assert all exemptions at the same time, in the original district court proceedings." *Hiken v. Dep't of Defense*, 872 F. Supp. 2d 936, 940 (N.D. Cal. 2012) (quoting *Maydak v. United States DOJ*, 218 F.3d 760, 764 (D.C. Cir. 2000)).  Where the government does not assert all applicable exemptions at the same time, it risks waiving unasserted exemptions. *See, e.g.*, *Maydak*, 218 F.3d at 764.  Although *Maydak* would not necessarily foreclose the assertion of additional FOIA exemptions at a later stage in this district court litigation, out of an abundance of caution the FBI will seek an order preserving the right to invoke and justify exemptions other than 7(A) should its Exemption 7(A) withholdings be found inapplicable.

Thus, in the event that the factual basis for the assertion of Exemption 7(A) lapses or the Court rejects the FBI's legal position on the Exemption 7(A) withholdings, the FBI will seek to preserve the ability to assert that the records are exempt from release—in whole or in part—under other FOIA

---

[2] Proper utilization of the categorical approach requires the agency to:  "(1) define functional categories of documents; (2) conduct a document-by-document review to assign documents to proper categories; and (3) explain to the court how release of *each category* would interfere with enforcement proceedings." *Lawyers Comm. for Civ. Rights of the San Francisco Bay Area v. United States Dep't of the Treasury*, No. C 07-2590 PJH, 2009 U.S. Dist. LEXIS 42327, at *11 (N.D. Cal. May 11, 2009).

exemptions.  The FBI accordingly proposes to:  (1) review the records asserting the categorical 7(A) exemption and litigate the appropriateness of those 7(A) withholdings in summary judgment briefings once processing is complete, and (2) if the Exemption 7(A) factual basis lapses and/or the Court rejects the FBI's 7(A) withholdings, then assert and litigate any remaining underlying exemptions.

Defendant asserts that bifurcating these proceedings would benefit both the parties and the Court by promoting judicial economy, preserving agency resources, and ensuring the speedy and efficient resolution of this matter.  It would not be an efficient use of either the parties' or the Court's resources to require motions on the non-7(A) exemptions until the protection afforded by Exemption 7(A) has lapsed or is rejected by the Court.  Moreover, without bifurcation, the time it will take for the FBI to process and release responsive, non-exempt records will inevitably increase.  Seidel Decl. ¶¶ 10-11.  Rather than a categorical document-by-document review for Exemption 7(A) withholding, reviewing the material for additional underlying exemptions will involve a lengthier page-by-page review to identify additional underlying exemptions for assertion despite the blanket coverage of Exemption 7(A).  *Id.*  ¶ 10.  Without bifurcating the proceedings, the FBI would have to justify additional—and likely superfluous— exemptions by (1) reviewing each page of every document to determine exactly what documents, or portions thereof, are responsive to the FOIA request; and (2) determining, for responsive material, whether that information is protected by an exemption in addition to Exemption 7(A).  *Id.*  These additional steps would approximately double the time that the FBI needs to respond to the FOIA request.  *Id.* ¶ 11.

**CIR's position:**

Plaintiff anticipates opposing Defendant's motion to bifurcate these proceedings, as it contravenes the "general" and well-established rule that the government "must assert all exemptions at the same time, in the original district court proceedings."  *Maydak*, 218 F.3d at 764 (stating "[w]e have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings" in order to avoid waiving the arguments); *see also Hiken*, 872 F. Supp. 2d at 940 (quoting *Maydak*, 218 F.3d at 764); *Schanen v. U.S. Dep't of Justice*, 762 F.2d 805, 808 (9th Cir. 1985), *modified on reh'g*, 798 F.2d 348 (9th Cir. 1986), *withdrawn*, 773 F.2d 1065 (9th Cir. 1985) (restating the rule).  "[T]he [FOIA] statute says nothing that would indicate that Exemption 7(A) is so unique" that it should get special treatment, as it is simply "one exception on a list of many."  *Maydak*,

218 F.3d at 766.  Moreover, according to *Maydak*, failing to properly assert all exemptions at once would result in waiver, further making bifurcation impermissible.  *Id.*

Plaintiff also anticipates opposing Defendant's motion on the grounds that it is a drain on judicial resources, fails to promote judicial economy, and delays the speedy and efficient resolution of this case—involving a FOIA request submitted nearly four years ago.  The FBI's proposal to bifurcate these proceedings would require two separate rounds of summary judgment motion practice (*i.e.* first making a summary judgment motion asserting Exemption 7(A) and then separate summary judgment motion asserting all other incorrectly preserved exemptions).  This proposed process could easily protract litigation for a full year.  Instead, the government should follow the normal FOIA process enumerated under *Robbins Tire* and its progeny, and satisfy "its burden of proof under Exemption 7(A) by grouping documents in categories and offering generic reasons for withholding the documents in each category." *Id.* at 763 (citing *Robbins Tire & Rubber Co.*, 437 U.S. at 236; *Bevis v. Dep't of State*, 801 F.2d 1386, 1390 (D.C. Cir. 1986), *Crooker v. Bureau of Alcohol, Tobacco, & Firearms*, 789 F.2d 64, 66-67 (D.C. Cir. 1986)).  Given that bifurcation is a straightforward question of well-established law, Plaintiff proposes that this Court decide the issue at the upcoming Case Management Hearing.

In fulfilling the *Robbins Tire* process, Plaintiff also contends that the FBI should provide a "Vaughn index" which describes each document withheld and identifies the FOIA exemptions claimed. *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975).  A *Vaughn* index is customary for Exemption 7 cases, *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (involving investigatory files); *ACLU of N. Cal. v. FBI*, 881 F.3d 776 (9th Cir. 2018) (same), and would benefit all parties and this Court by providing an understanding of what records exist and why they have been withheld which would be useful for summary judgment motion practice.  Additionally, with the *Vaughn* list, the government could satisfy its burden of proof, which it carries, with respect to the other exemptions.  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (en banc) (per curiam) (citation and internal quotation marks omitted).  For these reasons, a *Vaughn* index is often provided by the agency or ordered by the Court, particularly in Exemption 7 cases.  *Wiener*, 943 F.2d at 977.

Defendant notes that a *Vaughn* index is generally not necessary in Exemption 7(A) cases.  *See,*

*e.g.*, *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987) ("When . . . a claimed FOIA exemption is based on a general exclusion, such as Exemption 7(A)'s criminal investigation exclusion, . . . a *Vaughn* index is futile."); *see also Unigard Ins. Co. v. Dep't of the Treasury*, 997 F. Supp. 1339, 1341 (S.D. Cal. 1997) ("A *Vaughn* index need not be produced for exemption (b)(7)(A) withholdings because (b)(7)(A) is a general exclusion, by which the entire class of materials is per se exempt from disclosure regardless of the content of each document withheld.") (internal quotation marks omitted); *Agrama v. IRS*, 282 F. Supp. 3d 264, 274-75 (D.D.C. 2017); *Wishart v. Comm'r ex rel. United States*, No. 97-20614 SW, 1998 U.S. Dist. LEXIS 13306, at *8-9 (N.D. Cal. Aug. 6, 1998).  Here, because the FBI plans to rely on Exemption 7(A) to categorically withhold non-public documents from release, the Court should not require the FBI to prepare a *Vaughn* index.  At a minimum, Plaintiff's request for a *Vaughn* index is premature, unduly burdensome, and would unnecessarily slow the pace of processing.  *See, e.g.*, *McCash v. CIA*, Case No. 5:15-cv-02308-EJD, 2015 U.S. Dist. LEXIS 111169, *2 (N.D. Cal. Aug. 20, 2015) ("Production of a *Vaughn* index is not required in every FOIA case. . . .  Indeed, even under *Vaughn*, an index of withheld documents is only necessary when there exists a factual dispute regarding whether the documents fall within a disclosure exception, and such dispute cannot be resolved based solely on agency affidavits"); *Stimac v. United States DOJ*, 620 F. Supp. 212, 213 (D.D.C. 1985) ("[P]reparation of a *Vaughn* Index would be premature before the filing of dispositive motions.").

### 5. **Amendment of Pleadings**

No party anticipates amending its pleadings at this time.

### 6. **Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding preservation of evidence in this action.

### 7. **Disclosures**

The parties agree that initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) are not necessary because this is a FOIA action.

### 8. **Discovery**

To date, no discovery has been taken by any party.  The parties note that discovery is generally

not appropriate in FOIA actions. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (discovery is limited in FOIA cases "because the underlying case revolves around the propriety of revealing certain documents"); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) (citing *Judicial Watch, Inc. v. Export–Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000)). On this basis, Defendant does not believe that discovery is called for in this case.

However, CIR reserves the right to seek discovery under Federal Rule of Civil Procedure 56(f) after FBI files its motion for summary judgment and supporting declarations or indices pursuant to *Vaughn*, 484 F.2d at 826-28. The Ninth Circuit has squarely acknowledged "a plaintiff's right to conduct discovery prior to summary judgment in an action against the government under the Freedom of Information Act." *Church of Scientology of S.F. v. IRS*, 991 F.2d 560, 563 (9th Cir. 1993); (citing *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir.), cert. denied, 505 U.S. 1212 (1992)); *see also Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (stating that if there are genuine issues of material fact remaining at the summary judgment stage of the case, a bench trial or adversary hearing must take place).

**9.   Class Actions**

This case is not a class action.

**10.   Related Cases**

There are no related cases pending before this Court as defined by Local Rule 3-12.

**11.   Relief**

Plaintiff seeks responsive, non-exempt documents as well as reasonable attorney's fees and litigation costs. The FBI denies that Plaintiff is entitled to any relief and seeks dismissal.

**12.   Settlement and ADR**

The parties have conferred about ADR processes and believe that ADR is premature at this time. The parties are continuing to communicate and are working to narrow the issues.

**13.   Consent to Magistrate for All Purposes**

Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. _X_ Yes ___ No

**14.**  **Other References**

None applicable.

**15.**  **Narrowing of Issues**

None applicable.

**16.**  **Expedited Trial Procedure**

The parties do not believe that this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64.

**17.**  **Scheduling**

Once the FBI finishes loading the records onto its processing systems on approximately November 20, 2019, it will be able to make a better estimate regarding the timelines for processing and release of responsive records, assuming (1) bifurcation and (2) no bifurcation. Seidel Decl. ¶ 12. Because the FBI does not yet have a clear understanding of how long record processing will take in this matter, the FBI believes that setting a briefing schedule for dispositive motions is premature.

It is also important to note that the FBI is currently inundated with an extraordinary amount of Freedom of Information/Privacy Act ("FOIPA") requests and pending FOIPA litigations. *Id.* ¶ 13. The FBI is currently involved in approximately 344 pending FOIPA litigations, many of which have court ordered/established processing deadlines. *Id.* This puts tremendous strain on RIDS' limited FOIPA processing resources. *Id.* While RIDS is working diligently to comply with Plaintiff's FOIA request, assigning additional resources to further expedite Plaintiff's request would pull resources away from RIDS' efforts to process FOIPA requests for other requesters and could jeopardize RIDS' ability to meet other FOIPA litigation deadlines. *Id.* ¶ 14.

Plaintiff asserts that the FBI's inability to count the number of pages and estimate the calendar for processing, at this late point, is confusing. Regardless of any strains on the FBI's resources, the inability to propose a timeline for production, on top of the proposal for bifurcation, further thwarts disclosure of matters in the public interest. Plaintiff therefore requests that processing in this case begin immediately on a rolling basis.

Plaintiff is also prepared to schedule a summary judgment motion calendar, at the Case Management Conference, as is usual for FOIA cases.

1    **18.    Trial**

2    The parties anticipate that this action will involve purely legal issues and will be resolved by

3    motion without the need for a trial.

4    **19.    Disclosure of Non-party Interested Entities or Persons**

5    As a governmental entity or agency, the FBI is exempt from the disclosure requirement of Civil

6    Local Rule 3-15.  Pursuant to Local Rule 3-15, Plaintiff filed its Certification of Interested Entities or

7    Persons on August 5, 2019, and certified that, other than the named parties, there are no interests to report.

8    *See* ECF No. 3.  It remains true that Plaintiff has no interests to report, other than the named parties.

9    **20.    Professional Conduct**

10   All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for

11   the Northern District of California.

12   **21.    Other matters as may facilitate the just speedy and inexpensive disposition of this**

13   **matter**

14   None at this time.

15   DATED:  October 31, 2019                    Respectfully submitted,

16

17                                               DAVID L. ANDERSON
                                                 United States Attorney

18                                               */s/ Jevechius D. Bernardoni\**
                                                 _____

19                                               JEVECHIUS D. BERNARDONI
                                                 Assistant United States Attorney

20   DATED:  October 31, 2019

21                                               Respectfully submitted,

22                                               */s/ D. Victoria Baranetsky*
                                                 _____

23                                               D. Victoria Baranetsky
                                                 The Center for Investigative

24                                               Reporting

25   * I, Jevechius D. Bernardoni, hereby attest that I have been authorized to submit the electronic signatures

26   indicated by a "conformed" signature (/s/) within this e-filed document.

27

28

JOINT CASE MANAGEMENT STATEMENT                                                          11
NO. 19-cv-4541 LB