1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  JEVECHIUS D. BERNARDONI (CABN 281892)
   Assistant United States Attorney
4
5      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
6      Telephone:  (415) 436-7164
       Facsimile:  (415) 436-7234
7      jevechius.bernardoni@usdoj.gov
8
   Attorneys for Defendant FEDERAL
9  BUREAU OF INVESTIGATION

10            UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA

12             SAN FRANCISCO DIVISION

13

14 | THE CENTER FOR INVESTIGATIVE | Case No. 19-cv-4541 LB
   | REPORTING,
15 |                              | **DEFENDANT FEDERAL BUREAU OF**
   |                              | **INVESTIGATION'S NOTICE OF MOTION**
16 |        Plaintiff,            | **AND MOTION FOR SUMMARY JUDGMENT;**
   |                              | **MEMORANDUM OF POINTS AND**
17 |    v.                        | **AUTHORITIES**
18 | FEDERAL BUREAU OF INVESTIGATION, |
   |                              | Date:  December 3, 2020
19 |        Defendant.            | Time:  9:30 a.m.
   |                              | Place:  Courtroom B, 15th Floor
20 |                              | Hon. Magistrate Judge Laurel Beeler
21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUE ............................................................. 2

II.   BACKGROUND ................................................................................... 2

      A.   Administrative History Of The CIR's FOIA Request .................................. 2

      B.   The FBI's Records Retention Systems ................................................. 4

      C.   The FBI's Search For Potentially Responsive Records In This Case ................ 5

      D.   The FBI's Processing Of The FOIA Request .......................................... 5

      E.   Statutory Background .................................................................. 7

III.  LEGAL STANDARD ............................................................................ 8

IV.   ARGUMENT ...................................................................................... 9

      A.   The FBI's Search Was Adequate ...................................................... 9

      B.   The FBI Properly Relied On Exemption (b)(7)(A) To Categorically
           Withhold Non-Public Documents From Release ..................................... 11

      C.   The FBI Properly Asserted The Underlying FOIA Exemptions As Well ............ 15

           1.   The FBI Properly Asserted FOIA Exemption (b)(1) ........................... 15

           2.   The FBI Properly Asserted FOIA Exemption (b)(3) ........................... 16

           3.   The FBI Properly Asserted FOIA Exemption (b)(4) ........................... 17

           4.   The FBI Properly Asserted FOIA Exemption (b)(5) ........................... 18

                (i)    Deliberative Process Privilege ...................................... 18

                (ii)   Attorney-Client And Attorney Work Product Privileges ............... 19

           5.   The FBI Properly Asserted FOIA Exemptions (b)(6) And (b)(7)(C) ........... 20

           6.   The FBI Properly Asserted FOIA Exemption (b)(7)(D) ........................ 21

           7.   The FBI Properly Asserted FOIA Exemption (b)(7)(E) ........................ 23

           8.   The FBI Properly Asserted FOIA Exemption (b)(7)(F) ........................ 24

           9.   The FBI Has Demonstrated Foreseeable Harm ................................. 25

      D.   The FBI Released Reasonably Segregable Portions .................................. 25

V.    CONCLUSION ................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*ACLU of N. Cal. v. DOJ*,
   No. 13-cv-03127-MEJ, 2015 U.S. Dist. LEXIS 79340 (N.D. Cal. June 17, 2015) ........................... 19

*ACLU of N. Cal. v. FBI*,
   No. 12-cv-03728-SI, 2015 U.S. Dist. LEXIS 18885 (N.D. Cal. Feb. 17, 2015) ............................... 21

*Animal Legal Def. Fund v. FDA*,
   836 F.3d 987 (9th Cir. 2016) ................................................................................................................ 8

*Assembly of the State of California v. U.S. Dep't of Commerce*,
   968 F.2d 916 (9th Cir. 1992) .............................................................................................................. 19

*Assoc. Press v. U.S. Dep't of Def.*,
   554 F.3d 274 (2d Cir. 2009) ............................................................................................................... 20

*Bevis v. Dep't of State*,
   801 F.2d 1386 (D.C. Cir. 1986) ................................................................................................. 6, 13, 15

*Binion v. United States Dep't of Justice*,
   695 F.2d 1189 (9th Cir. 1983) ............................................................................................................ 11

*Boyd v. Criminal Div. of DOJ*,
   475 F.3d 381 (D.C. Cir. 2007) .............................................................................................................. 7

*Buffalo Field Campaign v. United States Dep't of the Interior, Nat'l Park Serv.*,
   No. CV 19-165-M-DWM, 2020 U.S. Dist. LEXIS 119151 (D. Mont. July 7, 2020)....................... 25

*Carter v. U.S. Dep't of Commerce*,
   307 F.3d 1084 (9th Cir. 2002) ............................................................................................................ 18

*Church of Scientology of California v. U.S. Dep't of the Army*,
   611 F.2d 738 (9th Cir. 1979) ................................................................................................................ 9

*Citizens Comm'n on Human Rights v. FDA*,
   45 F.3d 1325 (9th Cir. 1995) ................................................................................................................ 9

*Cook v. United States DOJ*,
   No. C04-2542L, 2005 U.S. Dist. LEXIS 49876 (W.D. Wash. Sept. 13, 2005) ................................ 12

*Council on American-Islamic Rels., California v. FBI*,
   749 F. Supp. 2d 1104 (S.D. Cal. 2010) ............................................................................................. 22

*Ctr. For Biological Diversity v. U.S. Envtl. Prot. Agency*,
   279 F. Supp. 3d 121 (D.D.C. 2017) ................................................................................................... 19

*Ctr. for Investigative Reporting v. United States DOL*,
   No. 19-cv-05603-SK, 2020 U.S. Dist. LEXIS 118114 (N.D. Cal. July 6, 2020) .............................. 17

*Dep't of the Interior v. Klamath Water Users' Protective Ass'n*,
   532 U.S. 1 (2001) ............................................................................................................................... 18

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

*Dickerson v. DOJ*, 992 F.2d 1426
(6th Cir. 1993) ................................................................................................................. 12

*Dudman Comm'ns Corp. v. Dep't of the Air Force*,
815 F.2d 1565 (D.C. Cir. 1987) ...................................................................................... 19

*FBI v. Abramson*,
456 U.S. 615 (1982) ........................................................................................................... 7

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) .................................................................................................... 17

*Freedom of the Press Found. v. DOJ*,
241 F. Supp. 3d 986 (N.D. Cal. 2017) ............................................................................ 16

*Gerstein v. United States DOJ*,
No. C-03-04893 RMW, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005) ......... 11

*Gordon v. FBI*,
390 F. Supp. 2d 897 (N.D. Cal. 2004) ...................................................................... 16, 17

*Hamdan v. U.S. Dep't of Justice*,
797 F.3d 759 (9th Cir. 2015) ........................................................................................ 9, 16

*Hunt v. CIA*,
981 F.2d 1116 (9th Cir. 1992) ........................................................................................... 9

*Iturralde v. Comptroller of the Currency*,
315 F.3d 311 (D.C. Cir. 2003) ........................................................................................... 9

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ........................................................................................................... 7

*Jordan v. DOJ*,
591 F.2d 753 (D.C. Cir. 1978) ........................................................................................ 19

*Judicial Watch, Inc. v. DOJ*,
432 F.3d 366 (D.C. Cir. 2005) ........................................................................................ 25

*KXTV, LLC v. United States Citizenship & Immigration Servs.*,
No. 2:19-cv-00415-JAM-CKD, 2020 U.S. Dist. LEXIS 39494 (E.D. Cal. Mar. 6, 2020) ............... 23

*Lahr v. NTSB*,
569 F.3d 964 (9th Cir. 2009) ...............................................................................9, 20, 21

*Lane v. Dep't of the Interior*,
523 F.3d 1128 (9th Cir. 2008) ........................................................................................... 8

*Lawyers Comm. for Civ. Rights of the San Francisco Bay Area v. United States Dep't of the Treasury*,
No. C 07-2590 PJH, 2009 U.S. Dist. LEXIS 42327 (N.D. Cal. May 11, 2009) ............... 24

*Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*,
534 F. Supp. 2d 1126 (N.D. Cal. 2008) .................................................................. 8, 9, 10

*Lewis v. IRS*,
    823 F.2d 375 (9th Cir. 1987) ............................................................................... 8, 9, 13

*Long v. Immigration & Customs Enf't*,
    No. 14-cv-00109 (APM), 2020 U.S. Dist. LEXIS 96468 (D.D.C. June 2, 2020) ............................ 24

*Los Angeles Times Communications, LLC v. Department of Army*,
    442 F. Supp. 2d 880 (C.D. Cal. 2006) ........................................................................ 24

*Lynch v. Dep't of the Treasury*,
    No. 99-1697, 2000 U.S. App. LEXIS 1392 (9th Cir. Jan. 28, 2000) .............................................. 13

*Mapother v. DOJ*, 3 F.3d 1533 (D.C. Cir. 1993) ................................................................. 12, 13

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
    108 F.3d 1089 (9th Cir. 1997) .............................................................................. 18

*Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) .............................................................................. 19

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) ................................................................................. 8

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ......................................................................... 25

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
    861 F.2d 1114 (9th Cir. 1988) ........................................................................... 18, 19

*National Public Radio v. Bell*,
    431 F. Supp. 509 (D.D.C. 1977) ........................................................................... 12

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ......................................................................................... 6, 7

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ......................................................................................... 18

*Pac. Fisheries, Inc. v. United States*,
    539 F.3d 1143 (9th Cir. 2008) ............................................................................. 25

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) .............................................................................. 10

*Pickard v. DOJ*,
    653 F.3d 782 (9th Cir. 2011) ................................................................................. 7

*Powers v. DOJ*,
    No. 03-C-893, 2006 U.S. Dist. LEXIS 62756 (E.D. Wis. Sept. 1, 2006) ......................................... 13

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ......................................................................................... 19

*Rosenberg v. U.S. Dep't of Def.*,
   342 F. Supp. 3d 62 (D.D.C. 2018) ........................................................................................ 25

*Rosenfeld v. DOJ*,
   57 F.3d 803 (9th Cir. 1995) ................................................................................................... 21

*SAE Prods. v. FBI*, 589 F. Supp. 2d 76 (D.D.C. 2008) .................................................................. 2

*SafeCard Servs., Inc
   . v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ........................................................................ 9, 10

*Shannahan v. IRS*,
   672 F.3d 1142 (9th Cir. 2012) ................................................................................................ 9

*Sussman v. U.S. Marshals Service*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................................................ 11

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749 (1989) .............................................................................................................. 20

*Unigard Ins. Co. v. Dep't of the Treasury*,
   997 F. Supp. 1339 (S.D. Cal. 1997) ....................................................................................... 8

*United States v. Richey*,
   632 F.3d 559 (9th Cir. 2011) ................................................................................................ 19

*Voinche v. FBI*,
   46 F. Supp. 2d 26 (D.D.C. 1999) .......................................................................................... 11

*Watkins v. U.S. Bureau of Customs & Border Prot.*,
   643 F.3d 1189 (9th Cir. 2011) .............................................................................................. 17

*Weisberg v. DOJ*,
   745 F.2d 1476 (D.C. Cir. 1984) ......................................................................................... 8, 9

*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir. 2004) ............................................................................................. 10

*Wishart v. Comm'r ex rel. United States*,
   No. 97-20614 SW, 1998 U.S. Dist. LEXIS 13306 (N.D. Cal. Aug. 6, 1998) ....................... 8

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) .............................................................. 9, 15, 16

*Yonemoto v. Dep't of Veterans Affairs*,
   686 F.3d 681 (9th Cir. 2012) ............................................................................................ 8, 20

*Zemansky v. U.S. EPA*,
   767 F.2d 569 (9th Cir. 1985) ....................................................................................... 8, 9, 10

## STATUTES

18 U.S.C. § 3123(d) ...................................................................................................................... 17

18 U.S.C. § 3509 .......................................................................................................................... 17

28 U.S.C. § 533 ................................................................................................................ 11

28 U.S.C. § 534 ................................................................................................................ 11

31 U.S.C. § 5319 .............................................................................................................. 17

5 U.S.C. § 552(a)(3) ..................................................................................................... 7, 9

5 U.S.C. § 552(a)(4) ......................................................................................................... 8

5 U.S.C. § 552(a)(8) ..................................................................................................... 7, 25

5 U.S.C. § 552(b) ......................................................................................................... 7, 25

5 U.S.C. § 552(b)(3) ........................................................................................................ 16

5 U.S.C. § 552(b)(4) ........................................................................................................ 17

5 U.S.C. § 552(b)(5) .................................................................................................. 18, 20

5 U.S.C. § 552(b)(6) ........................................................................................................ 20

5 U.S.C. § 552(b)(7)(C) ............................................................................................... 4, 20

5 U.S.C. § 552(b)(7)(D) ............................................................................................ 21, 22

5 U.S.C. § 552(b)(7)(E) ............................................................................................. 23, 24

5 U.S.C. § 552(b)(7)(F) .................................................................................................... 24

50 U.S.C. § 3024 .............................................................................................................. 17

## OTHER AUTHORITIES

Executive Order 12333 ..................................................................................................... 11

Executive Order 13526 ............................................................................................... 15, 16

H.R. REP. NO. 89-1497, at 6 (1966) .................................................................................. 7

O'Reilly, Federal Information Disclosure, § 9:12 (2007 Suppl.) ...................................... 10

## RULES

Fed. R. Civ. P. 56(c) .......................................................................................................... 8

Federal Rule of Criminal Procedure 6(e) ........................................................................ 17

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on December 3, 2020, at 9:30 a.m., or as soon thereafter as may be heard, before the Honorable Magistrate Judge Laurel Beeler, Courtroom B, 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 defendant the Federal Bureau of Investigation ("the FBI"), by its attorney, Assistant United States Attorney Jevechius D. Bernardoni, will move this Court for an order granting summary judgment in favor of the FBI on the claims of plaintiff The Center for Investigative Reporting ("The CIR"); and for such other and further relief as this Court deems appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The motion is based on this notice, the attached memorandum of points and authorities, and the accompanying declarations of Michael G. Seidel and Gregg A. Maisel, and exhibits filed in support thereof; the Court's files and records in this matter and/or other matters of which the Court takes judicial notice; and any oral argument that may be presented to the Court.

## RELIEF SOUGHT

The FBI requests an order granting the FBI's motion for summary judgment and such other appropriate and further relief.

DATED:  September 18, 2020                          Respectfully submitted,

                                                    DAVID L. ANDERSON
                                                    United States Attorney

                                                    */s/ Jevechius D. Bernardoni*
                                                    JEVECHIUS D. BERNARDONI
                                                    Assistant United States Attorney
                                                    Attorneys for the FBI

## MEMORANDUM OF POINTS AND AUTHORITIES

This action pertains to a Freedom of Information Act ("FOIA") request that plaintiff The Center for Investigative Reporting ("The CIR")[1] submitted to defendant the Federal Bureau of Investigation ("the

---

[1] It is not clear that Mr. Jonathan Jones—the reporter who submitted the FOIA request at issue—submitted the FOIA request on behalf of The CIR because the FOIA request expressly states that Mr. Jones is a "freelance journalist" and the return address on the FOIA request is not The CIR's headquarters.  ECF No. 1-2, Ex. A.  Indeed, Mr. Jones did not identify his request as associated with The CIR until approximately two years later, in December 2018.  Seidel Decl. ¶ 15; Seidel Decl. Ex. D.  Therefore, The

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

1

1  FBI").  The CIR seeks disclosure of records properly withheld under well-established FOIA principles.

2  The FBI, having properly processed the FOIA request, moves for summary judgment pursuant to Federal

3  Rule of Civil Procedure 56.

4       The FBI's search was reasonably calculated to locate all responsive records.  The FBI has released

5  all segregable, public domain materials to The CIR.  All remaining materials are categorically exempt

6  from disclosure pursuant to Exemption (b)(7)(A).  The non-public materials sought by The FBI relate to

7  a pending investigation, there is an open arrest warrant and a pending indictment for the subject of The

8  CIR's FOIA request, and the Department of Justice intends to pursue criminal prosecution of the subject

9  of the FOIA request once he is released from Indonesian custody.  Further, the FBI adequately shows

10 foreseeable harm, explaining through the declarations of Michael G. Seidel and Gregg A. Maisel the

11 specific harm to the FBI's investigatory and prosecution processes if the withheld material is disclosed.

12 Accordingly, the Court should grant the FBI's summary judgment motion.

13      In addition to asserting Exemption (b)(7)(A) to categorically withhold the records, the FBI also

14 properly asserts all underlying exemptions, namely FOIA Exemptions (b)(1), (b)(3), (b)(4), (b)(5), (b)(6),

15 (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

16 **I.  STATEMENT OF THE ISSUE**

17      Whether the FBI is entitled to summary adjudication as to whether (1) its search was adequate;

18 (2) it properly applied the FOIA exemptions and reasonably segregated its productions; and (3) it

19 adequately articulated foreseeable harm.

20 **II.  BACKGROUND**

21      **A.  Administrative History Of The CIR's FOIA Request**

22      By letter dated November 30, 2015, The CIR[2] submitted a FOIA request to the FBI seeking:

23

24

25 CIR may not be a proper party in this case.  *See, e.g.*, *SAE Prods. v. FBI*, 589 F. Supp. 2d 76, 79-82
   (D.D.C. 2008) (dismissing FOIA claim on basis that plaintiff lacked standing to pursue judicial review

26 because individual who made FOIA requests did not clearly indicate that he was doing so on behalf of
   plaintiff corporation).  In the interests of efficiency, however, the FBI did not move to dismiss on this

27 basis.

28 [2] For the purposes of this motion, "The CIR" refers to both The CIR and Mr. Jones.

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

All records, files, interviews, reports, memos, letter, emails, and documents concerning the death of two American citizens, Ricky Lynn Spier and Leon Edwin "Ted" Burgon after an attack that occurred on August 31, 2002, when 10 schoolteachers and a 6-year-old child were ambushed while they were returning from a picnic to their residences in Tembagapura, Papua Province, Indonesia, including but not limited to all records in the central records system, field offices, investigative case management, electronic case files, and/or universal index of cases.  In making this request, I also request all records relating to the Indonesian citizen, Anthonius Wamang, in connection to the attack on August 31, 2002 as referenced above.

ECF No. 1-2, Ex. A; Seidel Decl. Ex. A.

The non-public information sought by The CIR is located in investigative files that are exempt from disclosure pursuant to FOIA Exemption (b)(7)(A).  Seidel Decl. ¶ 49; Maisel Decl. ¶ 7.  Anthonius Wamang is the subject of a pending FBI investigation.  Seidel Decl. ¶¶ 49-50; Maisel Decl. ¶ 6.  There is an open indictment against Anthonius Wamang, and there is an active warrant for his arrest.  Seidel Decl. ¶ 50; Maisel Decl. ¶ 6.  Moreover, the Department of Justice intends to pursue criminal prosecution of Anthonius Wamang once he is released from Indonesian custody.  Maisel Decl. ¶ 10.  Thus, release of non-public materials responsive to The CIR's FOIA request would trigger a multitude of harms, including undermining future prosecution proceedings by placing this information into the public domain and potentially compromising the investigation by revealing its scope and direction, including the identities of cooperating witnesses.  Seidel Decl. ¶¶ 55-58; Maisel Decl. ¶ 11.

On January 4, 2016, a representative of the FBI responded to The CIR's request, stating, among other things, that the FBI would neither confirm nor deny the existence of records on one or more third parties as such records are exempt pursuant to FOIA Exemptions 6 and 7(C), and noting that proof of death was required to move forward with the request.  Seidel Decl. ¶ 7; Seidel Decl. Ex. B.  On January 8, 2016, The CIR inquired about the FOIA request and provided a link to an FBI press release on an indictment for Anthonius Wamang.  Seidel Decl. ¶ 8; Seidel Decl. Ex. C.  Almost two years later, on December 3, 2018, The CIR again contacted the FBI about the request, and the FBI responded that the case was closed because the FBI did not receive proof of death.  Seidel Decl. ¶¶ 10-11; Seidel Decl. Ex. D.  The CIR responded with a copy of the previous correspondence and additional death records, and the FBI subsequently re-opened the case.  Seidel Decl. ¶¶ 12-17; Seidel Decl. Ex. D.  On February 12, 2019, the

FBI sent a final determination letter stating that the material The CIR requested was located in investigative files exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A).  Seidel Decl. ¶ 19; Seidel Decl. Ex. F.

On March 11, 2019, The CIR sent an administrative appeal letter to the DOJ's Office of Information Policy ("OIP").  Seidel Decl. ¶ 20; Seidel Decl. Ex. G.  OIP sent a letter to The CIR on July 29, 2019, affirming, on partly modified grounds, the FBI's actions in response to the request.  Seidel Decl. ¶ 21; Seidel Decl. Ex. H.  OIP advised The CIR that the requested information was properly withheld in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision.  *Id.*  Moreover, in regards to the portion of the request seeking records concerning Anthonius Wamang, OIP advised The CIR that, to the extent non-public responsive records exist, disclosure of law enforcement records concerning a third-party individual could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to 5 U.S.C. § 552(b)(7)(C) and that it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by this exemption.  *Id.*

The CIR then filed the above-captioned complaint on August 5, 2019.  ECF No. 1.

### B.    The FBI's Records Retention Systems

The Seidel Declaration describes in significant detail the FBI's current and legacy records retention and case management systems, including how records are identified, stored, and indexed within those systems and how the FBI can search within its records retention systems for records that are responsive to FOIA requests.  *See* Seidel Decl. ¶¶ 29-36.  The Seidel Declaration also describes the FBI's general process for responding to FOIA requests like the request at issue in this case.  Namely, upon receipt of FOIA requests where—as here—the subject matter predates the implementation of the FBI's current case management system ("Sentinel"), the FBI's Record/Information Dissemination Section ("RIDS") begins its search efforts by conducting index searches via the "ACS Search" function in Sentinel.  *Id.* ¶ 37.  RIDS then builds on its ACS index search by conducting an index search of Sentinel records to ensure it captures all relevant data indexed after the implementation of Sentinel.  *Id.*  The automated indices, available within

1    Sentinel and the ACS search function in Sentinel, in most cases represent the most reasonable means for

2    the FBI to locate records potentially responsive to FOIA requests because these automated indices offer

3    access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and

4    administrative subjects.  *Id.*  Index searches are the means by which potentially responsive records are

5    located, but ultimately, an analyst must consider potentially responsive indexed records against the

6    specific parameters of individual requests.  *Id.* ¶ 38.  Responsiveness determinations are made once

7    indexed records are gathered, analyzed, and sorted by analysts who then make informed scoping decisions

8    to determine the total pool of records responsive to an individual request.  *Id.*

9          **C.    The FBI's Search For Potentially Responsive Records In This Case**

10         As described in the Seidel Declaration, RIDS conducted an index search for potentially responsive

11   records employing the Sentinel and ACS indices available through Sentinel, using the names of the

12   individuals identified in The CIR's FOIA request (*i.e.*, Anthonius Wamang, Ricky Spier, Rick Spier, Leon

13   Burgon and Ted Burgon).  Seidel Decl. ¶¶ 39-41.  As a result of that search, the FBI located pending

14   investigative files pertaining to Anthonius Wamang and an attack on August 31, 2002, in Tembagapura,

15   Papua Province, Indonesia, resulting in the death of two American citizens, Ricky Lynn Spier and Leon

16   Edwin "Ted" Burgon.  *Id.* ¶ 41.  The subject of the responsive investigative files, Anthonius Wamang, has

17   been convicted in Indonesia, where he is serving a prison sentence.  *Id.*; Maisel Decl. ¶ 4.

18         The search conducted by the FBI was reasonably calculated to locate records responsive to The

19   CIR's request.  *Id.* ¶ 42.  The CRS—where the FBI searched for responsive records—is the only FBI

20   system of records where RIDS would reasonably expect to locate responsive records.  *Id.* ¶ 43.  Moreover,

21   there is no indication from the information located as the result of the index search that responsive material

22   would reside in any other FBI system or location; therefore, there is no basis for RIDS to conclude a search

23   elsewhere could reasonably be expected to locate responsive material.  *Id.*

24         **D.    The FBI's Processing Of The FOIA Request**

25         The FBI reviewed and processed all records responsive to The CIR's request in a manner intended

26   to achieve maximum disclosure consistent with the access provisions of the FOIA.  Seidel Decl. ¶ 44.

27   Where, as here, a request is received for records related to an ongoing FBI investigation, the FBI

28

commonly asserts FOIA Exemption (b)(7)(A) in response to such a request, but the FBI segregates and releases information related to the pending investigation where release would not jeopardize future investigative or prosecutive efforts. *Id.* ¶ 55. The application of Exemption 7(A) in litigation involves a three-part process requiring the government to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of documents in each category would interfere with pending or prospective law enforcement proceedings. *Id.* ¶ 52; *Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978) (allowing categorical application for Exemption 7(A)). The FBI conducted a document-by-document review in this case to determine the applicability of Exemption 7(A), in addition to all underlying exemptions, and has grouped the documents into functional categories. *Id.* ¶¶ 52-53.

As part of the FBI's document-by-document review of the responsive records, the FBI made every effort to provide The CIR with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records. *Id.* ¶¶ 44, 55. As a result of these efforts, the FBI was able to segregate 398 pages and 51 minutes and 11 seconds of media as non-exempt material from the responsive records. *Id.* ¶ 44. The FBI's releases to The CIR were as follows:

- **January 24, 2020**: The FBI released 251 pages of non-exempt, public source materials.[3] The FBI's document release letter also notified The CIR that the requested material was located in an investigative files exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and that it was withholding the non-public records in their entirety on that basis. Seidel Decl. ¶ 23; Seidel Decl. Ex. L.

- **February 28, 2020**: The FBI released 147 pages of non-exempt, public source materials.[4] Seidel Decl. ¶ 24; Seidel Decl. Ex. J.

- **May 21, 2020**: The FBI released a DVD containing 51 minutes and 11 seconds of non-exempt, public source materials. Seidel Decl. ¶ 25; Seidel Decl. Ex. K.

---

[3] Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) were applied to remove hand-written notes made on copies of these pages including sensitive file classifications, file numbers, and initials/names of FBI agents. Seidel Decl. ¶ 23 n.3.

[4] Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) were applied to remove hand-written notes made on copies of these pages including sensitive file classifications, file numbers, and initials/names of FBI agents. Seidel Decl. ¶ 24 n.4.

- **June 30, 2020**:  The FBI informed The CIR of the ongoing status of its review of the responsive material to establish all applicable underlying FOIA Exemptions.  Seidel Decl. ¶ 26; Seidel Decl. Ex. L.

- **July 10, 2020**:  The FBI informed The CIR that the requested material was still located in investigative files exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A) and it was withholding the non-public records in their entirety on that basis.  Moreover, the FBI advised The CIR that its review of all responsive material for underlying exemptions was complete and in addition to Exemption (b)(7)(A), the following exemptions were applicable to portions of the responsive records:  FOIA Exemptions (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).  Seidel Decl. ¶ 27; Seidel Decl. Ex. M.

## E.    Statutory Background

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB*, 437 U.S. at 242.  Accordingly, FOIA generally requires the disclosure of agency records upon request.  5 U.S.C. § 552(a)(3)(A).  But the right to access agency records is not unlimited. To the contrary, FOIA includes nine statutory exemptions to the general disclosure obligation.  5 U.S.C. § 552(b)(1)-(9).  These exemptions reflect Congress's decision "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. REP. NO. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *see also Pickard v. DOJ*, 653 F.3d 782, 790 (9th Cir. 2011) (Wallace, J., concurring) ("'Congress established FOIA' to strike a balance between the public's interest in knowing 'what [its] government is up to' and the 'legitimate governmental or private interests' in withholding documents subject to FOIA's exemptions.") (quoting *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 385 (D.C. Cir. 2007)).  Although the nine exemptions should be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that they must have "meaningful reach and application."  *John Doe Agency*, 493 U.S. at 152.

The FOIA Improvement Act of 2016, which was enacted on June 30, 2016, codified the Department of Justice's "foreseeable harm" standard and provides, among other things, that agencies "shall withhold information" "only if the agency reasonably foresees that disclosure would harm an

1  interest protected by an exemption" or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A).

2  **III.   LEGAL STANDARD**

3      A court reviews an agency's response to a FOIA request de novo.  5 U.S.C. § 552(a)(4)(B).

4  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving

5  party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Because facts in FOIA cases are

6  rarely in dispute, most such cases are decided on motions for summary judgment."  *Yonemoto v. Dep't of*

7  *Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012) (citation omitted), *overruled on other grounds by*

8  *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016); *see also Lawyers' Comm. for Civil*

9  *Rights v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all

10 FOIA determinations should be resolved on summary judgment.").  Discovery is seldom necessary or

11 appropriate.  *See Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134-35 (9th Cir. 2008).

12     An agency bears the burden of establishing the adequacy of its search for records responsive to a

13 FOIA request.  *Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. DOJ*, 745

14 F.2d 1476, 1485 (D.C. Cir. 1984)).  Similarly, the agency bears the burden of justifying the assertion of

15 FOIA exemptions to redact or withhold documents.  5 U.S.C. § 552(a)(4)(B).  To meet these burdens, an

16 agency may rely upon reasonably detailed, non-conclusory affidavits.  *Minier v. CIA*, 88 F.3d 796, 800

17 (9th Cir. 1996); *Zemansky*, 767 F.2d at 571.  Unlike in FOIA cases involving other exemptions, *Vaughn*

18 indices are generally not necessary in Exemption 7(A) cases.  *See, e.g.*, *Lewis v. IRS*, 823 F.2d 375, 380

19 (9th Cir. 1987) ("When . . . a claimed FOIA exemption is based on a general exclusion, such as Exemption

20 7(A)'s criminal investigation exclusion, . . . a *Vaughn* index is futile."); *see also Unigard Ins. Co. v. Dep't*

21 *of the Treasury*, 997 F. Supp. 1339, 1341 (S.D. Cal. 1997) ("A *Vaughn* index need not be produced for

22 exemption (b)(7)(A) withholdings because (b)(7)(A) is a general exclusion, by which the entire class of

23 materials is per se exempt from disclosure regardless of the content of each document withheld.") (internal

24 quotation marks omitted); *Wishart v. Comm'r ex rel. United States*, No. 97-20614 SW, 1998 U.S. Dist.

25 LEXIS 13306, at *8-9 (N.D. Cal. Aug. 6, 1998).[5]

26

27 ───────────────
[5] In denying the FBI's motion to bifurcate, the Court also found that The CIR's request for a *Vaughn* index

28 was "procedurally inappropriate and premature."  ECF No. 23.  Thus, as instructed by the Court during
oral argument on the motion to bifurcate, the FBI has not submitted a *Vaughn* index in support of this

Affidavits submitted by an agency are entitled to a presumption of good faith.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Indeed, "a district court is not required to conduct an independent *in camera* review of each withholding unless an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency."  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015).  Moreover, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption."  *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (quoting *Hunt v. CIA*, 981 F.2d 1116, 1119-20 (9th Cir. 1992)).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).  An agency that has submitted satisfactory affidavits is entitled to summary judgment.  *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004); *see also Lewis*, 823 F.2d at 378 ("If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further.'" (quoting *Church of Scientology of California v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

## IV.   ARGUMENT

### A.   The FBI's Search Was Adequate

Federal agencies must conduct searches that are reasonably calculated to locate all agency records responsive to a FOIA request.  5 U.S.C. § 552(a)(3)(C)-(D); *Zemansky*, 767 F.2d at 571; *see also Hamdan*, 797 F.3d at 770-71 (setting forth standard for evaluating FOIA searches).  To that end, "there is no requirement that an agency search every record system . . . or that a search be perfect."  *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1130 (citing cases).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the **search** for those documents was **adequate**."  *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citation and internal quotation marks omitted, emphasis in original).  In general, the adequacy of a search is judged by its methods, not its results.  *Lahr v. NTSB*, 569 F.3d 964, 986-89 (9th Cir. 2009); *Zemansky*, 767 F.2d at 571 (quoting *Weisberg*, 745 F.2d at 1485); *Iturralde v. Comptroller of the*

---

motion, but rather a detailed declaration which provides as much information as possible without identifying the actual exempt information that the FBI has protected.  Seidel Decl. ¶ 44.

1  *Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined

2  not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").

3  Accordingly, the failure of an agency "to turn up a particular document, or mere speculation that as yet

4  uncovered documents might exist, does not undermine the determination that the agency conducted an

5  adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also*

6  *SafeCard Services, Inc.*, 926 F.2d at 1201 (the agency need only show that "the search was reasonably

7  calculated to discover the requested documents, not whether it actually uncovered every document

8  extant."). To justify its search for purposes of summary judgment, an agency may provide an affidavit

9  explaining its search in reasonable detail. *Zemansky*, 767 F.2d at 571. An affidavit need not "set forth

10 with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*,

11 684 F.2d 121, 127 (D.C. Cir. 1982).

12     As explained in the Seidel Declaration, the FBI's search was "reasonably calculated to uncover all

13 relevant documents." *See Zemansky*, 767 F.2d at 571; Seidel Decl. ¶¶ 39-43. The FBI searched the FBI's

14 systems of records where the FBI would reasonably expect to locate responsive records. Seidel Decl.

15 ¶ 43. The FBI employed an index search using search parameters likely to capture responsive records—

16 here, the names of the individuals identified in The CIR's FOIA request (*i.e.*, Anthonius Wamang, Ricky

17 Spier, Rick Spier, Leon Burgon, and Ted Burgon). *Id.* ¶¶ 39-41. And, the FBI's document-by-document

18 review of the materials located through that search did not indicate that responsive material would reside

19 in any other FBI system or location. *Id.* ¶ 43. Thus, there is no basis for the FBI to conclude a search

20 elsewhere could reasonably be expected to locate responsive material. *Id.* The FOIA does not require the

21 FBI to do anything more than it has already done. *See, e.g.*, *Lawyers' Comm. for Civil Rights of San*

22 *Francisco Bay Area*, 534 F. Supp. 2d at 1130 ("It is sufficient that the searching person identified the

23 employees who might have responsive documents, reviewed certain documents, and requested that agency

24 employees forward responsive documents to her.") (quoting O'Reilly, Federal Information Disclosure,

25 § 9:12 (2007 Suppl.)).

26

27

28

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

**B.**   **The FBI Properly Relied On Exemption (b)(7)(A) To Categorically Withhold Non-Public Documents From Release**

FOIA Exemption (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . ." 5 U.S.C. § 552(b)(7)(A).   To invoke this exemption, "the government must show 'that (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding.'"   *Gerstein v. United States DOJ*, No. C-03-04893 RMW, 2005 U.S. Dist. LEXIS 41276, *21-22 (N.D. Cal. Sept. 30, 2005) (quoting *Voinche v. FBI*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999)); *Lewis*, 823 F.2d at 379; *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1114-15 (D.C. Cir. 2007).

The withheld information easily meets the threshold requirement of being compiled for law enforcement purposes.   The Ninth Circuit has explained that "an agency with a clear law enforcement mandate . . . need establish only a 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed" to satisfy this test.   *Binion v. United States Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983) (citation omitted).   There can be no serious dispute that the FBI is "an agency with a clear law enforcement mandate."   Pursuant to 28 U.S.C. §§ 533 and 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.   *See* 28 U.S.C. §§ 533, 534; Executive Order 12333; Seidel Decl. ¶ 45.   And, as described in the Seidel Declaration, the records at issue in this case were compiled for a law enforcement purpose and they squarely fall within the law enforcement duties of the FBI.   Seidel Decl. ¶ 46.   Thus, the FBI easily establishes a rational nexus between the FBI's law enforcement duties and the withheld records.   *Binion*, 695 F.2d at 1194.

The FBI also establishes that the withheld records relate to a pending or prospective law enforcement proceeding.  Exemption (b)(7)(A) applies to long-term or dormant investigations where the investigation could lead to a "prospective law enforcement proceeding." *National Public Radio v. Bell*, 431 F. Supp. 509, 514 (D.D.C. 1977); *see also Dickerson v. DOJ*, 992 F.2d 1426, 1432 (6th Cir. 1993) (affirmance in 1993 of district court's conclusion that FBI's investigation into 1975 disappearance of Jimmy Hoffa remained ongoing and therefore was still 'prospective' law enforcement proceeding); *Cook v. United States DOJ*, No. C04-2542L, 2005 U.S. Dist. LEXIS 49876 (W.D. Wash. Sept. 13, 2005) (In 2005, the continued use of Exemption (b)(7)(A) was held proper in the FBI's long-term investigation of the 1971 airplane hijacking by "D.B. Cooper," who parachuted out of a plane with a satchel of money). Here, while the investigation is long-term, it is not dormant—Anthonius Wamang is the subject of a pending FBI investigation.  Seidel Decl. ¶¶ 49-50, 54; Maisel Decl. ¶ 6.  In addition, there is an open indictment against Mr. Wamang, and an active warrant for his arrest.  Seidel Decl. ¶ 50; Maisel Decl. ¶ 6. Indeed, the government recently reaffirmed its request to keep the arrest warrant for Mr. Wamang open during an August 2020 "fugitive calendar call" in the District of Columbia.  Maisel Decl. ¶ 6.  And, the FBI has expressed its intention to pursue capture of Mr. Wamang if he were released from custody in Indonesia.  *Id.*  Finally, the Department of Justice intends to pursue criminal prosecution of Anthonius Wamang once he is released from Indonesian custody.  Maisel Decl. ¶ 10.  Thus, the records at issue in this lawsuit involve a pending or prospective law enforcement proceeding.

The fact that Anthonius Wamang is currently in prison in Indonesia does not change this analysis because enforcement proceedings nevertheless "can reasonably be anticipated."  *See Mapother v. DOJ*, 3 F.3d 1533, 1541 (D.C. Cir. 1993).  As described in the Maisel Declaration, defendants sentenced to life imprisonment in many countries have the opportunity for release, and, under Indonesian law, prisoners serving life terms can apply for a determinant sentence of 20 years.  Maisel Decl. ¶ 5.  In cases such as this one, the United States keeps an indictment open on a defendant who has been convicted in a foreign country to allow the United States to seek custody of that defendant for trial in the event that defendant is ever released from prison.  *Id.*  Under United States law, there is no legal bar to prosecuting a Mr. Wamang for the same act(s) that formed the basis of a foreign prosecution because the constitutional protection

against Double Jeopardy applies only to prosecutions by the same sovereign. *Id.*; *see also Gamble v. United States*, 139 S. Ct. 1960 (2019). Thus, it "can reasonably be anticipated" that the government will prosecute Mr. Wamang, even though he is currently in prison in Indonesia. *Mapother*, 3 F.3d at 1541.

Finally, the FBI establishes that release of the withheld records would interfere with enforcement proceedings. When invoking Exemption (b)(7)(A), it is "well-established that the government may justify its withholdings by reference to generic categories of documents, rather than document-by-document." *Powers v. DOJ*, No. 03-C-893, 2006 U.S. Dist. LEXIS 62756, at *29 (E.D. Wis. Sept. 1, 2006). When an agency elects to use the "generic" approach, it "has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign the documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1389-90. The "government need not 'make a specific factual showing with respect to each withheld document.'" *Lynch v. Dep't of the Treasury*, No. 99-1697, 2000 U.S. App. LEXIS 1392, at *8 (9th Cir. Jan. 28, 2000) (quoting *Lewis*, 823 F.2d at 380); *see also Shannahan*, 672 F.3d at 1150 (same).

As described in the Seidel Declaration, the FBI followed the three-fold task required by *Bevis*: the FBI conducted a document-by-document review to determine the applicability of Exemption (b)(7)(A). Seidel Decl. ¶ 52. Pursuant to that review, the FBI identified 42 different types of records in the investigative files at issue. *Id.* ¶ 53(a)-(pp). The FBI then established that the documents in each of those 42 different record types fall into one or more defined functional categories (each functional category also includes sub-paragraphs with further descriptions of the types of records that fall into that category): (1) evidentiary/investigative materials and (2) administrative materials. *Id.* ¶ 58(A)-(B). The Seidel Declaration describes the types of information in the categories as fully as possible without disclosing the nature of the pending investigative efforts/programs to which these records pertain and/or revealing the investigative interests of the FBI, which could enable suspects to discern a "road map" of the investigations. *Id.* ¶ 58. Finally, the Seidel Declaration describes how the release of the types of information in each category would interfere with enforcement proceedings:

- **Information Concerning Physical and Documentary Evidence**: Further description of the materials and/or release of the materials themselves in this category could be

detrimental to success of the pending and prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected; allowing investigative subjects to discern the FBI's investigative strategies and employ countermeasures to avoid detection and disruption by law enforcement; and/or allow investigative targets to formulate strategies to contradict evidence to be presented in Court proceedings.  Seidel Decl. ¶ 58(A)(I).

- **Exchange of Information between Various Federal Agencies**:  Release of records documenting and detailing the exchange of information among law enforcement partners will disclose investigative information developed by various agencies that have cooperated with and provided information and records to the FBI in a pending investigation.  Seidel Decl. ¶ 58(A)(II).  This information was gathered to help identify subjects, suspects or other individuals of potential investigative interest and to assist in locating witnesses and/or confidential sources.  *Id.*  Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released.  *Id.*  Moreover, release of this information would identify the investigative interest in particular individuals and subject witnesses and confidential sources to potential harassment, intimidation, and physical or mental harm.  *Id.*

- **Reporting Communications**:  These communications permit the FBI and/or other agencies to monitor the progress of the investigation and to facilitate its conduct.  Seidel Decl. ¶ 58(B)(I).  These communications may reveal or confirm the cooperation of other local, state, or federal agencies in the investigation.  *Id.*  They are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed.  *Id.*  Additionally, they contain background information about third-party individuals, the origin of pertinent information that ties them to the investigation, their connection with the subjects, and their relationship with a pending investigation.  *Id.*  The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources, and the perceived weaknesses in the investigation.  *Id.*  The release of this information would reveal the nature and scope of a pending investigations.  *Id.*

- **Administrative Instructions**:  This type of information, whether it originates in communications from DOJ, the FBI, or other domestic or foreign law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures and strategies employed in this investigation.  Seidel Decl. ¶ 58(B)(II).  Release of this information would thus permit the subjects of these investigations to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions/investigative efforts.  *Id.*  Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices or other government agencies.  *Id.*  These instructions are commonly referred to as "investigative leads" and are set forth throughout the course of FBI investigations.  *Id.*

In short, the Seidel Declaration establishes that the FBI properly applied Exemption (b)(7)(A) to categorically withhold the non-public information at issue in this case. The FBI conducted a document-by-document review to determine the applicability of Exemption (b)(7)(A); it defined functional categories for the types of information at issue in this lawsuit; and it explained how the release of the material in each category would interfere with enforcement proceedings. That is all that is required of the FBI. *See Bevis*, 801 F.2d at 1389-90.

## C.   The FBI Properly Asserted The Underlying FOIA Exemptions As Well

Because the FBI establishes that Exemption (b)(7)(A) applies to all of the non-public information withheld in this case, the Court need not continue its analysis of the underlying exemptions—the non-public information is already properly withheld under the categorical (b)(7)(A) exemption. Nevertheless, in an abundance of caution, and to the extent the Court disagrees that the non-public portions of the records were properly withheld under Exemption (b)(7)(A), the FBI also asserts FOIA Exemptions (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F) to protect the FOIA-exempt portions of the responsive records within the pending investigative files. *See* ECF No. 23 (Order Denying the FBI's Motion to Bifurcate Proceedings). The FBI's assertions of these exemptions are "'logical' or 'plausible[,]'" and so should be sustained. *See Wolf*, 473 F.3d at 374-75.

### 1.   The FBI Properly Asserted FOIA Exemption (b)(1)

FOIA exemption (b)(1) protects from disclosure those records that are:

> A. specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and
>
> B. are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1). Executive Order 13526 permits an agency to classify information as national security information if:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of [Executive Order 13526]; and

(4) the original classification authority determines that the unauthorized disclosures of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 13526 § 1.1(a); Seidel Decl. ¶ 62.  In the area of national security, "it is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency."  *Freedom of the Press Found. v. DOJ*, 241 F. Supp. 3d 986, 998 (N.D. Cal. 2017) (quoting *Hamdan*, 797 F.3d at 775).

Here, the Seidel Declaration establishes that Mr. Seidel personally and independently examined the information withheld pursuant to Exemption (b)(1), and he determined that all of the substantive, procedural, and administrative requirements set forth above have been satisfied.  Seidel Decl. ¶ 63.  Thus, Mr. Seidel concluded that the information protected pursuant to Exemption (b)(1) was properly classified, continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 13526 § 1.4(c) - "intelligence activities (including covert action), intelligence sources or methods, or cryptology;" and E.O. 13526 § 1.4 (d) - "foreign relations or foreign activities."  *Id.*; *see also id.* at 64-70.  As the Court determined in *Freedom of the Press Found.*, the Seidel Declaration "provides sufficient detail regarding the withheld information to make the Exemption 1 classification plausible," and the withholdings should be sustained.  *Freedom of the Press Found.*, 241 F. Supp. 3d at 998; *see also Wolf*, 473 F.3d at 374-75.

## 2.    The FBI Properly Asserted FOIA Exemption (b)(3)

Title 5 U.S.C. § 552(b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  "A two-part inquiry determines whether Exemption 3 applies to a given case." *Gordon v. FBI*, 390 F. Supp. 2d 897, 899 (N.D. Cal. 2004) (quotation marks omitted).  "First, a court must determine whether there is a statute within the scope of Exemption 3.  Then, it must determine whether

1    the requested information falls within the scope of the statute." *Id.*

2          The FBI withheld information under Exemption (b)(3) pursuant to multiple statutes and/or rules:

3    (1) National Security Act of 1947, 50 U.S.C. § 3024(i)(1), (2) federal grand jury information pursuant to

4    Federal Rule of Criminal Procedure 6(e), (3) Pen Register Act, 18 U.S.C. § 3123(d), (4) Bank Secrecy

5    Act, 31 U.S.C. § 5319, and (5) Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509.  Seidel

6    Decl. ¶¶ 72, 75, 76, 78, 82.  The Seidel Declaration demonstrates that Exemption 3 applies to all of these

7    records.  *See id.*  The Seidel Declaration also establishes that the information requested falls within the

8    scope of these statutes and/or rules.  *See id.* ¶¶ 72-82.  Thus, the FBI establishes that it properly applied

9    Exemption (b)(3) to withhold these records.

10         **3.       The FBI Properly Asserted FOIA Exemption (b)(4)**

11         Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained

12   from a person [that is] privileged or confidential."   5 U.S.C. § 552(b)(4).   In order to invoke

13   Exemption (b)(4), the government agency must demonstrate that the information it seeks to protect is

14   (1) commercial and financial information, (2) obtained from a person or by the government, (3) that is

15   privileged or confidential.  *Ctr. for Investigative Reporting v. United States DOL*, No. 19-cv-05603-SK,

16   2020 U.S. Dist. LEXIS 118114, at *24 (N.D. Cal. July 6, 2020) (citing *Watkins v. U.S. Bureau of Customs*

17   *& Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011)).

18         The Seidel Declaration establishes all of the requirements for withholding information pursuant to

19   Exemption (b)(4).  While reviewing the records, the FBI located commercial and financial information

20   that originated with private commercial institution(s).  Seidel Decl. ¶ 84.  To determine whether this

21   information was customarily kept private, or at least closely held, by the person imparting it, *see Food*

22   *Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019), the FBI contacted the private commercial

23   institution(s) to ascertain if the information located by the FBI was customarily treated as private by the

24   commercial institution(s); and whether or not they provided this information to the FBI with an assurance

25   of privacy.  Seidel Decl. ¶ 84.  The private commercial institution(s) relayed to the FBI that the information

26   located by the FBI is typically treated as private by the private commercial institution(s) and it was shared

27   with an expectation the FBI would not disclose this information publically.  *Id.*  Based on the proprietary

28

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

1  nature of this information and the detriment to their commercial interests public release would entail, the

2  private commercial institution(s) informed the FBI it would not have supplied this information originally

3  without a belief the FBI would hold this information in confidence.  *Id.*  As such, the FBI determined that

4  these trade secrets and commercial or financial information was provided to the FBI under an assurance

5  of privacy, and is, therefore, exempt pursuant to Exemption 4.  *Id.*

### 4.    The FBI Properly Asserted FOIA Exemption (b)(5)

7         FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters

8  that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C.

9  § 552(b)(5).  It thus permits agencies to withhold privileged information, including confidential attorney-

10  client communications and attorney work product, and deliberative materials.  *See, e.g.*, *NLRB v. Sears,*

11  *Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089,

12  1092 (9th Cir. 1997).

### (i)    Deliberative Process Privilege

14         Exemption 5 incorporates the deliberative process privilege ("DPP").  *Dep't of the Interior v.*

15  *Klamath Water Users' Protective Ass'n*, 532 U.S. 1, 8 (2001).  The purpose of the DPP is "to allow

16  agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear

17  of public scrutiny."  *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002) (citations

18  omitted).  As the Supreme Court has explained:  "The deliberative process privilege rests on the obvious

19  realization that officials will not communicate candidly among themselves if each remark is a potential

20  item of discovery and front page news, and its object is to enhance the quality of agency decisions by

21  protecting open and frank discussion among those who make them within the Government."  *Klamath*,

22  532 U.S. at 8-9 (internal quotation marks and citations omitted); *see also Nat'l Wildlife Fed'n v. U.S.*

23  *Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (observing that the privilege "maintain[s] the

24  confidentiality of the give-and-take that occurs among agency members in the formulation of policy").

25         To fall within the DPP, a document must be both "(1) 'predecisional' or 'antecedent to the adoption

26  of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which

27  policies are formulated.'"  *Nat'l Wildlife Fed'n*, 861 F.2d at 1117 (quoting *Jordan v. DOJ*, 591 F.2d 753,

28

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

774 (D.C. Cir. 1978)).  A document is "predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"  *Assembly of the State of California v. U.S. Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).  A document is "deliberative" if "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Id.* (quoting *Dudman Comm'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  Further, it need not "contain recommendations on law or policy."  *Nat'l Wildlife Fed'n*, 861 F.2d at 1118.

Here, the FBI asserted the DPP to protect pre-decisional, internal agency deliberations.  Seidel Decl. ¶ 87.  And, as described in the Seidel Declaration, release of this information would cause foreseeable harm because FBI employees would hesitate to offer their candid and conscientious opinions to superiors or coworkers if they knew that their opinions of the moment might be made a matter of public record at some future date, and because such self-censorship would, in turn, degrade the quality of agency decisions by depriving the decision-makers of fully-explored options developed from robust debate.  *Id.*

### (ii)   Attorney-Client And Attorney Work Product Privileges

To establish the attorney-client privilege in the FOIA context, "an agency must show that (1) the information in the documents was communicated to or by an attorney as part of a professional relationship, (2) the information is confidential, and (3) the communication is based on confidential information provided by the client."  *Ctr. For Biological Diversity v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 146 (D.D.C. 2017) (quoting *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253-54 (D.C. Cir. 1977)).  The work-product protection applies to documents that are (1) "'prepared in anticipation of litigation or for trial'" and (2) "prepared 'by or for another party or by or for that other party's representative.'"  *See ACLU of N. Cal. v. DOJ*, No. 13-cv-03127-MEJ, 2015 U.S. Dist. LEXIS 79340, at *19 (N.D. Cal. June 17, 2015) (quoting *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)).

Here, the FBI withheld confidential attorney-client communications between and among FBI and DOJ counsel and FBI employees (their clients), that reflect the seeking and/or providing of legal advice. Seidel Decl. ¶ 89.  These communications were made in confidence, were not shared with or circulated to

individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance or advice in relation to government legal positions. *Id.* And, the FBI withheld under the attorney work product privilege interagency materials created by attorneys and/or at the direction of attorneys involved in counterterrorism and national security investigations associated with Mr. Wamang and/or others in reasonable anticipation of litigation. *Id.* ¶ 91. These materials are properly withheld under Exemption (b)(5).

### 5.    The FBI Properly Asserted FOIA Exemptions (b)(6) And (b)(7)(C)

Exemptions 6 and 7(C) exempt the disclosure of personal, private information. These exemptions are often considered together. *See Yonemoto*, 686 F.3d at 693 n.7. Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Ninth Circuit has established "a two-step test for balancing individual privacy rights against the public's right of access." *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017) First, disclosure must implicate a personal privacy interest that is "nontrivial" or more than "de minimis." *Id.* If the agency shows a nontrivial privacy interest, the court must "balance the individual's right of privacy against the public interest in disclosure." *Id.* This balancing involves the consideration of two factors: (1) "whether the public interest sought to be advanced is a significant one— one more specific than having the information for its own sake"; and (2) "whether the requested information is likely to advance that interest." *Id.*

Exemption (b)(7)(C), in contrast, authorizes the withholding of "records or information compiled for law enforcement purposes" to the extent they "could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C). The privacy interests protected by Exemption (b)(7)(C) are "a broad range of concerns relating to an 'individual's control of information concerning his or her person,' and an 'interest in keeping personal facts away from the public eye.'" *Lahr*, 569 F.3d at 974 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, 769 (1989)) (internal citations omitted). "[I]dentifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA." *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 285 (2d Cir. 2009) (citation omitted). It is well-settled that federal employees

involved in law enforcement possess protectable privacy interests in their identities.  *See, e.g.*, *Lahr*, 569 F.3d at 977 (holding that FBI agents have cognizable interest in withholding their names because "there is some likelihood that the agents would be subjected to unwanted contact by the media and others").

The FBI applied Exemption (b)(6) in conjunction with Exemption (b)(7)(C) to protect the names and identifying information of (1) FBI Special Agents and professional staff, (2) third parties who were merely mentioned in the investigative records responsive to The CIR's request, (3) third parties who were of investigative interest to the FBI, (4) personnel from non-FBI, federal, government agencies who provided information to or otherwise assisted the FBI in its investigation of Anthonius Wamang and/or others, (5) third-party victims, (6) individuals who were interviewed, and/or provided information by other means, to the FBI during the course of its investigation of Anthonius Wamang and/or others, (7) foreign, state, and local law enforcement employees. Seidel Decl. ¶¶ 95, 98, 99, 100, 102, 104.  In each case, the FBI appropriately balanced the individual's privacy rights against the public's right of access.  *Id.* ¶¶ 95, 98, 99, 100, 102, 104.  The FBI properly withheld this information under Exemptions (b)(6) and (b)(7)(C).

### 6.   The FBI Properly Asserted FOIA Exemption (b)(7)(D)

Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  "Under this exemption, a source is 'confidential' if it 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *ACLU of N. Cal. v. FBI*, No. 12-cv-03728-SI, 2015 U.S. Dist. LEXIS 18885, at *20 (N.D. Cal. Feb. 17, 2015) (quoting *Rosenfeld v. DOJ*, 57 F.3d 803, 814 (9th Cir. 1995)).  "The focus, therefore, is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  *Id.* (internal quotation marks omitted).  "Unlike Exemption 7(C), Exemption 7(D) requires no balancing of private and public interests."  *Id.* (quoting *Council on American-Islamic Rels.,*

1   *California v. FBI*, 749 F. Supp. 2d 1104, 1121 (S.D. Cal. 2010)).

2       Here, the FBI withheld the names and/or identifying information and information provided by

3   individuals, corporations, state and local law enforcement, and/or foreign law enforcement/intelligence

4   authorities under express assurances of confidentiality.[6]   Seidel Decl. ¶ 108.   With respect to these

5   individuals or entities, the FBI found evidence during the review for this case that these individuals/entities

6   (1) requested their identities not be revealed; (2) should be protected because FBI investigators would

7   have, by standard practice, expressly promised these third parties their identities and the information they

8   provided would remain confidential; and/or (3) provided information subject to particular agreements

9   between the FBI and the entities, agencies and/or foreign governments in which the entities requested non-

10  disclosure of their cooperation with the FBI.   *Id.*

11      The FBI also protected the names and/or identifying information and information provided by

12  individuals, corporations, state and local law enforcement, and/or foreign law enforcement/intelligence

13  authorities under circumstances in which confidentiality can be inferred.[7]   Seidel Decl. ¶ 113.   As to these

14  individuals/entities, the FBI found evidence that these third parties provided specific and detailed

15  information that is singular in nature concerning the activities of subjects who were of investigative

16  interest to the FBI.   *Id.*   Considering (1) the singularity of the information provided and the likelihood

17  these individuals could be identified through release of this information by those familiar with the events

18  described; (2) the proximity of these sources to the investigative subjects and events they described; and

19  (3) and the nature of the criminal acts they described, the FBI inferred these individuals provided this

20  information to the FBI only because they believed their cooperation with, and the information they

21  provided, would remain confidential.   *Id.*   The FBI also articulated the specific harms that would occur if

22  this material were disclosed.   Seidel Decl. ¶¶ 109-112, 114-115.   Thus, the FBI properly withheld this

23  information under Exemption (b)(7)(D).

24  _____

25  [6] As described in the Seidel Declaration, the FBI can only describe sources at a high level of generality

26  because to provide any more specific information about the confidential sources involved in a pending investigation could jeopardize and harm any pending or potential investigations.   Seidel Decl. ¶ 108 n.20.

27  [7] Again, the FBI can only describe sources at a high level of generality because to provide any more

28  specific information about the confidential sources involved in a pending investigation could jeopardize and harm any pending or potential investigations.   Seidel Decl. ¶ 113 n.20.

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

### 7.    The FBI Properly Asserted FOIA Exemption (b)(7)(E)

Exemption (b)(7)(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . [1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have set "a relatively low bar for the agency to justify withholding" information under Exemption 7(E). *KXTV, LLC v. United States Citizenship & Immigration Servs.*, No. 2:19-cv-00415-JAM-CKD, 2020 U.S. Dist. LEXIS 39494, at *20 (E.D. Cal. Mar. 6, 2020).

Here, the FBI applied Exemption (b)(7)(E) to protect (1) the methods the FBI uses to collect and analyze information it obtains for investigative purposes, (2) sensitive investigative techniques used to conduct national security investigations, (3) the focuses of specific FBI counterterrorism and national security investigations, (4) sensitive investigative file numbers, (5) methods and techniques involving the location and identity of FBI units, squads and/or divisions involved in the investigation of Mr. Wamang and/or others, (6) information pertaining to the types and dates of investigations referenced in the records at issue in this case, (7) reports and/or data resulting from the FBI's analysis of digital media collected during the investigations memorialized in the records at issue, (8) monetary amounts requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques, (9) security fax numbers, internal e-mail addresses, non-public intranet web addresses, and secure internal e-mail tools, (10) the identities of sensitive investigative databases and database search results located through queries of these non-public databases used for official law enforcement purposes by the FBI, (11) information concerning the targets and specific techniques utilized in surveillance operations conducted by the FBI in relation to the investigation at issue here, (12) the non-public investigative techniques and procedures of its informant program, and non-public, specific details concerning Confidential Human Source ("CHS") techniques and procedures that are otherwise known to the public, (13) certain sensitive investigative information located within standardized FBI FD-515 forms, and (14) details of FBI Operational Plans.  Seidel Decl. ¶¶ 119-153.

As discussed above, the withheld information easily meets the threshold requirement of being compiled for law enforcement purposes. *See supra* Part IV.B. Moreover, the information that the FBI withheld under Exemption (b)(7)(E) would disclose law enforcement techniques and procedures if released. Seidel Decl. ¶¶ 119-153. As such, this information is categorically exempted under (b)(7)(E). 5 U.S.C. § 552(b)(7)(E). Even if the Court finds that the withheld information constitutes "guidelines," instead of "techniques and procedures," the information still should be withheld because it meets the "relatively low bar" of risking circumvention of the law. *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011); *see generally* Seidel Decl. (establishing that disclosure of the information withheld by the FBI pursuant to Exemption (b)(7)(E) could be used to circumvent the law); *see also, e.g.*, *Long v. Immigration & Customs Enf't*, No. 14-cv-00109 (APM), 2020 U.S. Dist. LEXIS 96468 (D.D.C. June 2, 2020).

### 8.    The FBI Properly Asserted FOIA Exemption (b)(7)(F)

Title 5 U.S.C. § 552(b)(7)(F) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." In order to qualify for the (b)(7)(F) exemption, "an agency must establish non-conclusory reasons why disclosure of a category of withheld documents would reasonably be expected to endanger the life or physical safety of any individual." *Lawyers Comm. for Civ. Rights of the San Francisco Bay Area v. United States Dep't of the Treasury*, No. C 07-2590 PJH, 2009 U.S. Dist. LEXIS 42327, at *9 (N.D. Cal. May 11, 2009) (citing *Los Angeles Times Communications, LLC v. Department of Army*, 442 F. Supp. 2d 880, 898-900 (C.D. Cal. 2006) (emphasis added).

Here, the FBI applied Exemption (b)(7)(F) to protect the names and identifying information of individuals whom, if identified within the context of these records, the FBI believed would likely face violent retaliation. Seidel Decl. ¶ 155. The FBI determined that release of this information could reasonably be expected to endanger the life or physical safety of these individuals because the protected individuals provided information on individuals known to commit violent acts. *Id.* This non-conclusory showing meets the requirements for withholding under Exemption (b)(7)(F). *Lawyers Comm. for Civ. Rights of the San Francisco Bay Area*, 2009 U.S. Dist. LEXIS 42327, at *9.

### 9.    The FBI Has Demonstrated Foreseeable Harm

As set forth above, Congress amended FOIA in 2016 to add a "foreseeable harm" requirement.  5 U.S.C. § 552(a)(8)(A)(i).  District courts within the Ninth Circuit have found that an agency's articulation of its concerns with public confusion, being subject to public scrutiny, and "employees . . . reluctant[ance] to provide preliminary information, or to commit such information into writing, thereby denying decision-makers access to important information," satisfy the foreseeable harm requirement.  *Buffalo Field Campaign v. United States Dep't of the Interior, Nat'l Park Serv.*, No. CV 19-165-M-DWM, 2020 U.S. Dist. LEXIS 119151, at *19 (D. Mont. July 7, 2020).  Other courts have noted that perfunctory statements without more will not suffice; however, this specific requirement has not been adopted in this district. *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).  Indeed, non-generic, thoughtful articulations of foreseeable harm appear throughout the Seidel Declaration.  *See generally* Seidel Decl.

### D.    The FBI Released Reasonably Segregable Portions

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  This provision does not require disclosure of records in which the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").  Additionally, because the work product doctrine "shields both opinion and factual work product from discovery[,] . . . if a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents."  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (internal citations omitted); *see also Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("If a document is fully protected as work product, then segregability is not required.").  As set forth in the Seidel Declaration, all reasonably segregable information has been released to The CIR.  Seidel Decl. ¶¶ 44, 58(C), 156-159.  Accordingly, the FBI has produced all "reasonably segregable portion[s]" of the responsive records.  5 U.S.C. § 552(b).

## V.    CONCLUSION

For all of these reasons, this Court should enter summary judgment in favor of the FBI.

DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT
NO. 19-cv-4541 LB

1    DATED:  September 18, 2020                    Respectfully submitted,

2                                                  DAVID L. ANDERSON
                                                   United States Attorney
3

4                                                   */s/ Jevechius D. Bernardoni*
                                                   JEVECHIUS D. BERNARDONI
5                                                  Assistant United States Attorney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28