DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7164
    Facsimile:  (415) 436-7234
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendant FEDERAL
BUREAU OF INVESTIGATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>        Defendant. | Case No. 19-cv-4541 LB<br><br>**DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND CROSS-OPPOSITION TO PLAINTIFF THE CENTER FOR INVESTIGATIVE REPORTING'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 14, 2021<br>Time:  9:30 a.m.<br>Place:  Courtroom B, 15th Floor<br>Hon. Magistrate Judge Laurel Beeler |

# **TABLE OF CONTENTS**

I.      Introduction ................................................................................................................. 1

II.     The CIR's Challenges To The FBI's Exemption (b)(7)(A) Withholdings Are Incorrect
        On The Facts And The Law ......................................................................................... 2

        A.      The FBI Has A Pending Investigation Of Mr. Wamang And Is Actively
                Pursuing Enforcement Proceedings Against Him ............................................ 3

        B.      The Relevant Enforcement Proceedings For Purposes Of Exemption (b)(7)(A)
                Are Enforcement Proceedings In The United States, Not Indonesia .................. 5

        C.      Prosecution Of Mr. Wamang In The United States Is Not A "Legal
                Impossibility" .................................................................................................... 5

        D.      The FBI Properly Withheld Records Under The "Public Domain Doctrine" .... 7

                1.      Third-Party Publication Of Information Regarding Mr. Wamang Does Not
                        Destroy The FBI's Exemption (b)(7)(A) Assertion………………………………8

                2.      The CIR Does Not Carry Its Burden Of Establishing That The Specific
                        Information Withheld By The FBI Was "Officially Acknowledged"……………9

III.    The FBI Properly Asserted All Of The Underlying Exemptions ................................. 12

IV.     *In Camera* Review Is Neither Appropriate Nor Necessary, But The FBI Is Prepared
        To Provide The Court With Any Records It May Wish To Review ........................... 14

V.      The Government Has Demonstrated Foreseeable Harm ............................................. 15

VI.     The FBI Segregated And Released All Segregable Portions ...................................... 17

VII.    The CIR's Briefing Improperly Includes Allegations Of Wrongdoing That Are
        Unresponsive To The FOIA Request At Issue In This Lawsuit ................................. 18

VIII.   Conclusion ............................................................................................................... 19

**CASES**

*ACLU Found. v. DOJ*,
    418 F. Supp. 3d 466 (N.D. Cal. 2019)...................................................................... 8

*ACLU N. Cal. v. U.S. DOJ*,
    880 F.3d 473 (9th Cir. 2018) ............................................................................... 9

*ACLU v. CIA*,
    710 F.3d 422 (D.C. Cir. 2013) ............................................................................. 7

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ...................................................................... 9, 16

*Barney v. I.R.S.*,
    618 F.2d 1268 (8th Cir. 1980) ............................................................................. 5

*Bevis v. Dep't of State*,
    801 F.2d 1386 (D.C. Cir. 1986) .......................................................................... 15

*Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control & Prevention*,
    929 F.3d 1079 (9th Cir. 2019) .................................................................... 7, 8, 10

*Cleveland v. Groceryworks.com, LLC*,
    200 F. Supp. 3d 924 (N.D. Cal. 2016) ................................................................... 4

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .......................................................................... 3, 4

*Ctr. for Pub. Integrity v. U.S. Dep't of Energy*,
    287 F. Supp. 3d 50 (D.D.C. 2018) ........................................................................ 9

*Cumming v. United States*,
    No. 94-2070, 1995 U.S. App. LEXIS 20747 (1st Cir. Aug. 4, 1995) ........................... 6, 7

*Curran v. Dep't of Justice*,
    813 F.2d 473 (1st Cir. 1987) ............................................................................. 13

*Elec. Frontier Found. v. DOJ*,
    No. 4:11-cv-05221-YGR, 2014 U.S. Dist. LEXIS 110785 (N.D. Cal. Aug. 11, 2014)........7, 8, 10, 11

*Gamble v. United States*,
    l39 S. Ct. 1960 (2019) ...................................................................................... 5

*Gerstein v. United States DOJ*,
    No. C-03-04893 RMW, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005) ........................... 5

*Greenberger v. IRS*,
    283 F. Supp. 3d 1354 (N.D. Ga. 2017)................................................................... 13

*Hamdan v. United States DOJ*,
    797 F.3d 759 (9th Cir. 2015) ............................................................................. 17

*Hollingsworth Solderless Terminal Co. v. Turley*,
    622 F.2d 1324 (9th Cir. 1980) .......................................................................... 3

*In re Department of Justice*,
    999 F.2d 1302 (8th Cir. 1993) ........................................................................ 13

*Int'l Union of Elevator Constructors Local 2 v. United States Dep't of Labor*,
    747 F. Supp. 2d 976 (N.D. Ill. 2010) ............................................................. 13

*James Madison Project v. DOJ*,
    330 F. Supp. 3d 192 (D.D.C. 2018) .................................................................. 7

*Kacilauskas v. DOJ*,
    565 F. Supp. 546 (N.D. Ill. 1983) ................................................................... 13

*Leadership Conf. on Civil Rights v. Gonzales*,
    404 F. Supp. 2d 246 (D.D.C. 2005) ................................................................ 10

*Lewis v. IRS*,
    823 F.2d 375 (9th Cir. 1987) .......................................................... 13, 14, 15, 17

*Loving v. Dep't of Def.*,
    550 F.3d 32 (D.C. Cir. 2008) .......................................................................... 17

*MacPherson v. IRS*,
    803 F.2d 479 (9th Cir. 1986) .......................................................................... 15

*McClanahan v. United States DOJ*,
    204 F. Supp. 3d 30 (D.D.C. 2016) .............................................................. 17, 18

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ........................................................................ 16

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ........................................................................................ 15

*Pac. Fisheries, Inc. v. United States*,
    539 F.3d 1143 (9th Cir. 2008) ........................................................................ 17

*Payne v. Pauley*,
    337 F.3d 767 (7th Cir. 2003) ............................................................................ 4

*Pickard v. DOJ*,
    653 F.3d 782 (9th Cir. 2011) ............................................................................ 7

*Pollard v. FBI*,
    705 F.2d 1151 (9th Cir. 1983) ........................................................................ 15

*Public Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) ............................................................................ 8

*Solar Sources v. United States*,
    142 F.3d 1033 (7th Cir. 1998) ........................................................................ 13

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) .................................................................................. 18

*United States DOJ v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ..................................................................................................... 10

*United States v. Yakoob*,
  No. 07-20084, 2009 U.S. Dist. LEXIS 7823 (E.D. Mich. Feb. 3, 2009) ........................ 6

*Wilson v. CIA*,
  586 F.3d 171 (2d Cir. 2009) ............................................................................................ 8

*Wilson v. United States Dep't of the Treasury*,
  No. 15 C 9364, 2016 U.S. Dist. LEXIS 185182 (N.D. Ill. Oct. 12, 2016) ...................... 13

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ........................................................................................ 9

**STATUTES**

18 U.S.C. § 4101(j) .............................................................................................................. 6

18 U.S.C. § 4111 .............................................................................................................. 2, 6

5 U.S.C. § 552(b)(1) ........................................................................................................... 12

5 U.S.C. § 552(b)(3) ........................................................................................................... 12

5 U.S.C. § 552(b)(4) ........................................................................................................... 12

5 U.S.C. § 552(b)(5) ........................................................................................................... 12

5 U.S.C. § 552(b)(6) ........................................................................................................... 12

5 U.S.C. § 552(b)(7)(A) ................................................................................................. passim

5 U.S.C. § 552(b)(7)(C) ...................................................................................................... 12

5 U.S.C. § 552(b)(7)(D) ...................................................................................................... 12

5 U.S.C. § 552(b)(7)(E) ...................................................................................................... 12

5 U.S.C. § 552(b)(7)(F) ...................................................................................................... 12

**RULES**

Federal Rule of Civil Procedure 56 ................................................................................. 3, 4

DEFENDANT'S REPLY ISO MSJ AND CROSS-OPP. TO PLAINTIFF'S CROSS-MSJ
NO. 19-cv-4541 LB

# I.    Introduction

The CIR's Cross-Motion for Summary Judgment and Opposition to the FBI's Motion for Summary Judgment is based on incorrect legal standards, unsupported legal conclusions, and factual omissions.

First, The CIR challenges the FBI's Exemption (b)(7)(A) assertions on four separate grounds, each of which is incorrect:  (1) The CIR's argument that the FBI abandoned interest in this case rests on the omission of relevant and undisputed facts regarding the FBI's pending investigation of Mr. Wamang and the ongoing enforcement proceedings in the United States against him, relies on inadmissible testimony, and cites inapposite case law; (2) The CIR's argument that enforcement proceedings against Mr. Wamang have already concluded is a red herring—The CIR improperly focuses on Indonesian enforcement proceedings and does not recognize that the U.S. government has distinct interests in ensuring that its own enforcement proceedings are not prejudiced by premature release of law enforcement information or records; (3) The CIR asserts that there are "legal impossibilities" that would bar Mr. Wamang's prosecution in the United States, but the United States may obtain custody over Mr. Wamang even in the absence of an extradition treaty between the United States and Indonesia and 18 U.S.C. § 4111 does not bar Mr. Wamang's prosecution in the United States because that statute is applicable only to offenders transferred from a foreign country for the express purpose of completing a foreign sentence in the United States; and (4) The CIR's public domain doctrine discussion misstates the relevant legal standard because the public domain doctrine does not apply to information released by parties other than the FBI and The CIR also does not fulfill its burden of showing that any of the withheld material in the FBI's investigatory files was officially acknowledged by the FBI and that, assuming there was an official acknowledgement by the FBI, the withheld material is "as specific" as the information officially acknowledged by the FBI.

Second, the FBI properly asserted all of the underlying exemptions, and The CIR's repeated attempts to force the FBI to prepare a detailed, document-by-document, line-by-line *Vaughn* index are inappropriate in this Exemption (b)(7)(A) case.

Third, the FBI sustained its burden of proof on the claimed exemptions, and a judicially burdensome *in camera* review of 24,000 documents (or an unidentified subset of those documents) is not supported by Ninth Circuit law.

Fourth, the FBI has adequately demonstrated foreseeable harm, and The CIR's invocation of third-party-released public materials to undermine that harm is unconvincing because there is a stark difference between widespread public speculation regarding a purported set of facts and official acknowledgement from the FBI of those facts.

Fifth, The CIR misstates the FBI's legal burden to show that it appropriately segregated and released material, the FBI is entitled to a presumption that it appropriately segregated material, and The CIR does not provide a "quantum of evidence" to undermine this presumption.

Sixth, the Court should summarily reject The CIR's irrelevant and inappropriate allegations of FBI wrongdoing since records related to those purported actions are not responsive to the FOIA request at issue in this lawsuit.

Accordingly, the Court should grant the FBI's motion for summary judgment and deny The CIR's cross-motion for summary judgment.

## II.    The CIR's Challenges To The FBI's Exemption (b)(7)(A) Withholdings Are Incorrect On The Facts And The Law

The CIR advances four reasons why Exemption (b)(7)(A) purportedly does not apply in this case. Each of these arguments is unsupported in law and/or fact.  First, the relevant and uncontested facts demonstrate that the FBI has not abandoned its interest in this case and the U.S. Department of Justice ("DOJ") is actively pursuing enforcement proceedings against Mr. Wamang.  Second, it is immaterial whether enforcement proceedings have concluded in Indonesia because, for purposes of Exemption (b)(7)(A), the relevant enforcement proceedings that may be prejudiced by premature release of information are the pending enforcement proceedings in the United States.  Third, enforcement proceedings in the United States are not a "legal impossibility" because the United States may obtain custody of Mr. Wamang once he is released from prison in Indonesia and 18 U.S.C. § 4111 does not bar his prosecution in the United States.  Fourth, The CIR has not fulfilled its burden of showing that the

public domain doctrine applies here such that the FBI must disclose additional information from its confidential, pending investigative files.

### A. The FBI Has A Pending Investigation Of Mr. Wamang And Is Actively Pursuing Enforcement Proceedings Against Him

The CIR first argues that "the FBI abandoned its interest in this case years ago," that the FBI somehow irrevocably declined enforcement proceedings in the United States against Mr. Wamang when it turned Mr. Wamang over to the Indonesian authorities in 2006, and that, therefore, the FBI cannot rely on Exemption (b)(7)(A) here.  Pl. Br. at 13.  This argument rests on selective omission of relevant and uncontested facts, inadmissible declaration testimony, and inapposite case law.

As an initial matter, The CIR's argument fails to acknowledge the following relevant and uncontested facts:  (1) Mr. Wamang is the subject of a pending FBI investigation (ECF No. 42-1 ¶¶ 49-50; ECF No. 42-2 ¶ 6), (2) there is an open indictment against Mr. Wamang (ECF No. 42-1 ¶ 50; ECF No. 42-2 ¶ 6), (3) there is an active warrant for Mr. Wamang's arrest, which the U.S. government reaffirmed as recently as August 2020 (ECF No. 42-1 ¶ 50; ECF No. 42-2 ¶ 6), (4) the FBI has expressed its intention to pursue capture of Mr. Wamang if he is released from custody in Indonesia (ECF No. 42-2 ¶ 6), and (5) the DOJ will pursue criminal prosecution of Mr. Wamang in the United States if he is released from Indonesian custody (*id.* ¶ 10).  Indeed, far from "yellowing documents contained in long-closed files," the U.S. government's actions here demonstrate that it has by no means "abandoned its interest in this case," but instead has every intention of completing the enforcement proceedings that it has already initiated against Mr. Wamang.  Pl. Mot. at 13 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980)).

Moreover, The CIR's conclusion that the FBI lost interest in the case and "forfeited its opportunity to prosecute Mr. Wamang in the United States" is based on inadmissible testimony by Ms. Siregar.  *See* Pl. Br. at 13; *see also* ECF No. 45-2 ¶ 4.  In the context of summary judgment, courts are limited to relying only on competent and admissible evidence.  *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).  Federal Rule of Civil Procedure 56 provides that declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Personal knowledge may include inferences and opinions; however, those inferences must be substantiated by specific facts, "grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 940 (N.D. Cal. 2016) (quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).  Ms. Siregar has no personal knowledge of the FBI's or the DOJ's state of mind or interest in prosecution of Mr. Wamang, and her declaration does not include any "specific facts" that substantiate her speculation that "the FBI appeared to abandon its interest in any actual prosecution in Mr. Wamang."  *Compare id. with* ECF No. 45-2 ¶ 4.  As such, Ms. Siregar is not competent to testify to this purported fact, and The CIR cannot rely upon it in its motion for summary judgment.  Similarly, Ms. Siregar is not competent to testify as to whether the FBI "forfeited its opportunity to prosecute Mr. Wamang in the United States"—Ms. Siregar does not claim to have any knowledge of U.S. law, and has no basis to conclude that the FBI or the DOJ forever forfeited the ability to prosecute Mr. Wamang in the United States.[1]  *See infra* Part II.C.  To the contrary, AUSA Maisel, who is the Chief of the National Security Section of the United States Attorney's Office for the District of Columbia and who presented evidence to the Grand Jury to secure the indictment against Mr. Wamang, has outlined in his declaration the U.S. government's intent to take Mr. Wamang into custody at the conclusion of his Indonesian sentence.  ECF. No. 42-2.  He also has stated that the indictment remains open and the arrest warrant remains active.  *Id.* ¶ 6.

Finally, The CIR cites inapposite law in support of this argument.  Unlike in *Coastal States Gas Corp.*, 617 F.2d at 870, there is a pending investigation of Mr. Wamang, and the government is actively pursuing enforcement proceedings, as demonstrated by the open indictment and active arrest warrant

---

[1] As an aside, The CIR's arguments against application of Exemption (b)(7)(A) are internally inconsistent.  It is impossible to square The CIR's assertion that the FBI "declined the opportunity to bring [Mr. Wamang] to justice in the United States" with The CIR's separate argument that Indonesia's laws categorically would not allow extradition of Mr. Wamang to the United States.  *Compare* Pl. Br. at 13 *with id.* at 14.  If, as The CIR posits, the United States would not be able to extradite Mr. Wamang for trial in the United States, transferring Mr. Wamang to the Indonesian authorities while Mr. Wamang was still in Indonesia cannot be construed as abandoning "the opportunity to bring him to justice in the United States."  *Id.* at 13.

1 against Mr. Wamang.  And, while The CIR cites dicta in *Barney v. I.R.S.* in support of the proposition that

2 "once enforcement proceedings are . . . abandoned, exemption 7(A) will likely [sic] no longer apply to

3 prevent disclosure," *Barney* actually supports the FBI's position because that case involved enforcement

4 proceedings that had not yet commenced at the time of the FOIA lawsuit.  Pl. Br. at 13 (quoting 618 F.2d

5 1268, 1273-74 (8th Cir. 1980)).  Even though enforcement proceedings were merely prospective and had

6 not yet begun, the *Barney* Court still determined that Exemption (b)(7)(A) was properly asserted to

7 withhold records.   *Barney*, 618 F.2d at 1273-74.   Here, in contrast, the FBI's assertion of

8 Exemption (b)(7)(A) is even stronger than in *Barney* because enforcement proceedings against

9 Mr. Wamang have already been initiated and are currently pending in the United States.

10    **B.**    **The Relevant Enforcement Proceedings For Purposes Of Exemption (b)(7)(A) Are Enforcement Proceedings In The United States, Not Indonesia**

11

12    The CIR next suggests that enforcement proceedings have concluded because Mr. Wamang "was

13 already tried, convicted, and sentenced to life imprisonment by an Indonesian court."  Pl. Br. at 14.  This

14 argument misses the mark by a significant margin.  Whether Mr. Wamang was subjected to enforcement

15 proceedings *in Indonesia* has no bearing on whether release of the challenged records "could reasonably

16 be expected to cause some articulable harm" to a "pending or prospective" law enforcement proceeding

17 *in the United States*.  *Gerstein v. United States DOJ*, No. C-03-04893 RMW, 2005 U.S. Dist. LEXIS

18 41276, *21-22 (N.D. Cal. Sept. 30, 2005).   In other words, the fact that there were enforcement

19 proceedings somewhere in the world does not obliterate the United States' distinct interests in ensuring

20 that its own enforcement proceedings are not prejudiced by premature release of law enforcement

21 information or records.  *See, e.g.*, *Gamble v. United States*, l39 S. Ct. 1960 (2019) (upholding the "dual

22 sovereignty" doctrine, under which the United States Supreme Court has long held that a crime under one

23 sovereign's laws is not an offense under another sovereign's law).

24    **C.**    **Prosecution Of Mr. Wamang In The United States Is Not A "Legal Impossibility"**

25    The CIR next contends that Exemption (b)(7)(A) does not apply because there can be no

26 prosecution in the United States as a result of "two legal impossibilities":  (1) "the United States lacks an

27 extradition treaty with Indonesia and would thus be unable to bring Mr. Wamang into its territorial

28

1   jurisdiction" and (2) "any law enforcement proceeding against [Mr. Wamang] is statutorily barred by
2   18 U.S.C. § 4111 . . . ." Pl. Br. at 14. The CIR is wrong on both of these arguments.

3       First, not even The CIR's own declarant maintains that extradition is a "legal impossibilit[y]"—
4   Ambassador Robert Blake's declaration instead states that extradition of Mr. Wamang would be
5   "unlikely" (*i.e.*, not "impossible"), and acknowledges that Indonesia has previously extradited individuals
6   to the United States even in the absence of an extradition treaty between the two countries. *See* ECF
7   No. 45-1 ¶¶ 10-11. Thus, The CIR has not established that extradition from Indonesia is legally
8   impossible. Moreover, even assuming, *arguendo*, that extradition from Indonesia would be impossible,
9   that still does not mean that the United States could never obtain custody of Mr. Wamang. As DOJ Chief
10  Maisel stated in his declaration, even in cases where there is not an extradition treaty with another country,
11  "the United States still retains the ability to obtain custody of such defendants—including by extradition
12  or expulsion—if they ever travel outside the country where they were convicted." ECF No. 42-2 ¶ 5.
13  Indeed, Chief Maisel declared that he personally has "prosecuted and supervised the prosecution of . . .
14  defendants" in factually analogous circumstances. *Id.* And, the FBI "remains ready to pursue capture of
15  Wamang if he were released." *Id.* ¶ 6. Thus, it is not a "legal impossibilit[y]," as The CIR contends, that
16  the United States may obtain custody over Mr. Wamang if he is released from custody in Indonesia.

17      Next, citing 18 U.S.C. § 4111, The CIR contends that prosecution of Mr. Wamang in the United
18  States "is statutorily barred . . . ." Pl. Br. at 14. This argument is legally flawed. "Section 4111 is
19  applicable only to offenders transferred from a foreign country for the express purpose of completing the
20  execution of a foreign sentence in the United States." *United States v. Yakoob*, No. 07-20084, 2009 U.S.
21  Dist. LEXIS 7823, at *8-9 (E.D. Mich. Feb. 3, 2009) (citing *Cumming v. United States*, No. 94-2070, 1995
22  U.S. App. LEXIS 20747, at *4-5 (1st Cir. Aug. 4, 1995) (quoting 18 U.S.C. § 4101(j) and holding that the
23  protections of Section 4111 "can only be invoked if a defendant is transferred to the United States 'for the
24  purpose of execution in one country of a sentence imposed by the courts of another country.'")). Here, if
25  Mr. Wamang is released from prison in Indonesia, it would be because he has discharged his sentence
26  there, and not so that he could complete his Indonesian sentence in a United States prison. *Cumming*,
27  1995 U.S. App. LEXIS 20747, at *5. As such, Section 4111 is completely inapposite and would not bar

28

DEFENDANT'S REPLY ISO MSJ AND CROSS-OPP. TO PLAINTIFF'S CROSS-MSJ
NO. 19-cv-4541 LB

1  prosecution of Mr. Wamang in the United States. *Id.* In short, there are no "legal impossibilities" that

2  would bar prosecution of Mr. Wamang in the United States.

3  **D.    The FBI Properly Withheld Records Under The "Public Domain Doctrine"**

4  In its final challenge to the FBI's Exemption (b)(7)(A) assertion, The CIR argues that the FBI

5  "may not use Exemption 7(A) to categorically withhold information that was already made public by

6  Mr. Wamang's full and open trial in Indonesian court." Pl. Br. at 15; *see also id.* at 10-11 (contending

7  that "[t]he underlying information has been made public by many news outlets across the globe,

8  acknowledged by multiple public officials in Congress, and addressed in now-public State Department

9  wires."). This argument rests on a fundamentally flawed and incomplete understanding of the "public

10  domain doctrine" because the only public domain information that the FBI is required to disclose is the

11  specific, detailed information that the FBI itself has already "officially acknowledged"—whether similar

12  information has been made public in foreign proceedings, published in the press, written about in academic

13  articles, or made public by Congress or other U.S. governmental agencies is wholly immaterial.[2]

14  Vitally, the mere "public availability of the information does not, on its own, trigger application

15  of the official-acknowledgement doctrine. Instead, the ***specific*** information sought by the plaintiff must

16  already be in the public domain by official disclosure."[3] *Civil Beat Law Ctr. for the Pub. Interest, Inc. v.*

17  *Centers for Disease Control & Prevention*, 929 F.3d 1079, 1087 (9th Cir. 2019) (quotation marks and

18  citation omitted; emphasis in original). Thus, the standard for an official acknowledgement challenge

19  requires a plaintiff to identify "an intentional, public disclosure made by or at the request of a government

20  officer acting in an authorized capacity by the agency in control of the information at issue," that is "'as

21  specific as the information previously released.'" *Elec. Frontier Found. v. DOJ*, No. 4:11-cv-05221-

22  YGR, 2014 U.S. Dist. LEXIS 110785, at *16 (N.D. Cal. Aug. 11, 2014) (quoting *Pickard v. DOJ*, 653

23  F.3d 782, 787, 786 (9th Cir. 2011)). Once an agency has established that a FOIA exemption applies, "'a

24  plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to

25

26  [2] To the extent there are any public source materials (*e.g.*, press reports) in the FBI's pending investigative files, the FBI has already segregated and released them to The CIR. *See* ECF No. 42-1 ¶¶ 23-27, 44, 55.

27  [3] The terms "official acknowledgement" doctrine and the "public domain" doctrine are used interchangeably. *See James Madison Project v. DOJ*, 330 F. Supp. 3d 192, 204 (D.D.C. 2018) (citing

28  *ACLU v. CIA*, 710 F.3d 422, 426-27 (D.C. Cir. 2013)).

specific information in the public domain that duplicates that being withheld.'" *Id.* (quoting *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993)). "Within the more exacting context of official disclosure, courts have declined to 'infer official disclosure of information . . . [from the] release of information by another agency, or even by Congress.'" *ACLU Found. v. DOJ*, 418 F. Supp. 3d 466, 477 (N.D. Cal. 2019) (quoting *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009)). The official acknowledgement test "is a stringent one and presents a 'high hurdle for a FOIA plaintiff . . . [as the] Government's vital interest in information relating to national security and foreign affairs dictates that it must be.'" *Elec. Frontier Found.*, 2014 U.S. Dist. LEXIS 110785, at *16 (quoting *Public Citizen*, 11 F.3d at 203). The CIR fails to meet its burden under this "stringent" test.

### 1.    Third-Party Publication Of Information Regarding Mr. Wamang Does Not Destroy The FBI's Exemption (b)(7)(A) Assertion

The CIR predominantly points to a multitude of third-party releases (*e.g.*, Wikileaks articles, news reports, academic literature, Congressional statements, State Department wires, Indonesian court proceedings, etc.) to speculate that much of the information in the FBI's pending investigative files is public and must be released. Pl. Br. at 10-11, 15. But, as the above authorities demonstrate, ***these third-party releases*** are insufficient as a matter of law to act as a waiver of the FBI's Exemption (b)(7)(A) assertion. *ACLU Found.*, 418 F. Supp. 3d at 477 ("[T]he Court finds that the weight of authority suggests that the ACLU cannot seek disclosure of the FBI's policies based on other agencies having disclosed their own policies, together with acknowledgement that they share information with the FBI."); *see also Public Citizen*, 11 F.3d at 201 ("[E]ven if a fact has been the subject of media speculation, its official acknowledgment could damage national security."); *Civil Beat Law Ctr. for the Pub. Interest, Inc.*, 929 F.3d at 1087 ("public availability of the information does not, on its own, trigger application of the official-acknowledgement doctrine"). Thus, none of the third-party disclosures identified by The CIR are relevant to The CIR's public domain doctrine arguments.

The CIR's brief also improperly omits both the "official acknowledgement" and "specificity" elements in its discussion of the public domain doctrine test, even though the case law The CIR cites expressly acknowledges these limitations. *See* Pl. Br. at 10-11. In fact, the cases cited by The CIR actually

support the FBI's withholdings here because they do not buttress the proposition that mere "publicity spoils the claims of various exemptions . . . ." Pl. Br. at 10.  For example, in *ACLU N. Cal. v. U.S. DOJ*— one of the principal cases cited by The CIR—the Ninth Circuit remanded to the district court to "determine whether DOJ has ***officially acknowledged and publicly disclosed***" the withheld information.  880 F.3d 473, 491 (9th Cir. 2018) (emphasis added).  Similarly, the court in *Ctr. for Pub. Integrity v. U.S. Dep't of Energy* held that "an agency waives its right to claim a FOIA exemption for information that ***it has officially released*** in the public domain."  287 F. Supp. 3d 50, 63 (D.D.C. 2018) (quotation marks and citation omitted; emphasis added).  In *Wolf v. CIA*, the D.C. Circuit stated that "[a]n agency's official acknowledgment of information by prior disclosure, however, cannot be based on mere public speculation, no matter how widespread" but rather the requested information "must already have been made public through ***an official and documented disclosure***."  473 F.3d 370, 378 (D.C. Cir. 2007) (citation and quotation marks omitted; emphasis added).  And, in *Afshar v. Dep't of State*, the D.C. Circuit refused to find a waiver under the public domain doctrine because the public information (1) was not an "official and documented disclosure" and (2) the withheld information, if released, "would give a far more precise idea" than the "general outline" in the public materials.  702 F.2d 1125, 1133 (D.C. Cir. 1983).  These are not public domain doctrine cases cherry picked from Westlaw by the FBI to support its position—these cases are all cited in The CIR's own discussion of the public domain doctrine.  Pl. Br. at 10-11.  In short, The CIR's own cited case law demonstrates that the public domain doctrine does not apply to the third-party releases identified by The CIR.

### 2.  The CIR Does Not Carry Its Burden Of Establishing That The Specific Information Withheld By The FBI Was "Officially Acknowledged"

Other than FBI press releases (which are public and which the FBI released to The CIR through this litigation), The CIR identifies only two items that could even arguably be construed as an "official acknowledgement" by the FBI, as opposed to legally immaterial third-party releases.[4]  As to each of these

---

[4] The CIR's brief also contends that then-FBI Director Robert Mueller and the FBI's General Counsel, Valerie Caproni "acknowledged" certain misconduct.  Pl. Br. at 7.  While this could arguably be considered an "official acknowledgment," the topic that these officials purportedly acknowledged is not responsive to the FOIA request at issue in this lawsuit and appears to be included in The CIR's brief solely as an effort to paint the FBI in a bad light.  As discussed in more depth in Part VII, this is improper.

1   items, however, The CIR fails to meet its burden under the stringent official acknowledgement test.  *Elec.*

2   *Frontier Found.*, 2014 U.S. Dist. LEXIS 110785, at *16.

3   First, The CIR notes that "FBI Agents Ronald Eowan and Paul Myers" testified at Mr. Wamang's

4   trial in Indonesia, "'introduc[ing] several videos' and images of the 'weapons believed to have been used

5   in the attack' as evidence and describing meetings at which 'defendants confessed their roles in the attack,'

6   as later documented by the U.S. Embassy in Jakarta."  Pl. Br. at 5-6.  Here, The CIR falls woefully short

7   of meeting its burden.  Among other things, The CIR does not establish that (1) Agents Ronald Eowan

8   and Paul Myers testified in their official FBI capacities or (2) the FBI authorized them to testify at the

9   Indonesian trial.  Thus, The CIR does not establish that their testimony was an "official acknowledgement"

10   by the FBI.  *Elec. Frontier Found.*, 2014 U.S. Dist. LEXIS 110785, at *16.  Similarly, The CIR does not

11   establish that the FBI Agents' testimony and evidence was presented during a public portion of the trial

12   and that the information remains publicly available as a result of ***the FBI's*** official disclosure—indeed,

13   that The CIR cites a ***U.S. Embassy*** document ***released through Wikileaks*** for this assertion (*see* Pl. Br.

14   at 5-6) significantly undermines the conclusion that this information is "in the public domain by [the

15   FBI's] official disclosure."  *Civil Beat Law Ctr. for the Pub. Interest, Inc.*, 929 F.3d at 1087.  And, other

16   than identifying a few broad categories of materials, The CIR does not establish what "***specific***

17   information" it seeks that was purportedly officially disclosed by the FBI during a public trial in Indonesia.

18   *Id.* (emphasis in original).  Finally, even assuming that these records—none of which are specifically

19   identified by The CIR—were somehow officially acknowledged by the FBI fourteen years ago in a public

20   portion of a trial halfway across the world (in Indonesia), they would still be protected from disclosure by

21   the doctrine of practical obscurity.  *See, e.g.*, *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp.

22   2d 246, 258 (D.D.C. 2005) (finding that documents were protected from disclosure under the doctrine of

23   practical obscurity even though they had previously been given to symposium members in unredacted

24   form); *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762-65 (1989)

25   (recognizing the doctrine of practical obscurity); *see also* Third Declaration of Michael G. Seidel ("Third

26   Seidel Decl.") ¶ 5.

27

28

DEFENDANT'S REPLY ISO MSJ AND CROSS-OPP. TO PLAINTIFF'S CROSS-MSJ
NO. 19-cv-4541 LB

Second, the Declaration of Jonathan Jones attaches a transcript of a March 27, 2009 FBI awards ceremony that contains a high-level, three-paragraph description of the ambush, the investigation, and the apprehension of Mr. Wamang.  ECF No. 45-5 at Ex. 31.  The relevancy of this transcript is far from clear, since The CIR's brief does not even mention it.  *See generally* Pl. Br.  However, assuming that the transcript is intended to demonstrate an "official acknowledgement" from the FBI, thereby necessitating release of records, it is of extremely limited value since the FBI is only required to release information that is "'as specific as the information previously released.'"  *Elec. Frontier Found.*, 2014 U.S. Dist. LEXIS 110785, at *16.  The extremely high-level nature of the information in the transcript negates any inference that the FBI improperly withheld any information in its detailed pending investigative files, and The CIR fails to meet its burden of demonstrating that the withheld information "duplicates" the information in the public domain through the FBI's official disclosure.  *Id.*

In any event, the Third Seidel Declaration establishes that in this case "the FBI reviewed all records in its files in view of the public domain doctrine and provided to Plaintiff all records clearly identified as" falling within the doctrine.  Third Seidel Decl. ¶ 6.  Moreover, the Third Seidel Declaration shows that "absent a factual basis (the face of the document or other facts in the file) to conclude that a document in the investigative files is public source or was released in the public domain through an official acknowledgement of the FBI, such as an FBI official press release or court pleading, there is simply no practical way to determine whether a specific document in the FBI investigative files was eventually publicly disclosed by official FBI acknowledgement at a trial."  *Id.* ¶ 7.  Those practical hurdles are especially acute here, where the trial occurred fourteen years ago in a foreign country, and "there is not a method to which the FBI could verify whether certain documents in its files were made public during the trial by official FBI acknowledgement."  *Id.* ¶ 8.  And, even if there were a way for the FBI to identify these materials, it "would be a burdensome process requiring extensive research," and clear legal precedent shows that burden falls on the The CIR, not the FBI.  *Id.*; *see also Elec. Frontier Found. v. DOJ*, No. 4:11-cv-05221-YGR, 2014 U.S. Dist. LEXIS 110785, at *16 (articulating the "stringent" public domain doctrine test in which "a plaintiff asserting that information has been previously disclosed bears

1   the initial burden of pointing to specific information in the public domain that duplicates that being

2   withheld").

3          Accordingly, the FBI has already processed the responsive records with an eye towards the public

4   domain doctrine, and The CIR has not fulfilled its burden of establishing that the FBI is required to release

5   any more information than it already has.

6   **III.    The FBI Properly Asserted All Of The Underlying Exemptions**

7          In addition to Exemption (b)(7)(A), the FBI asserted all of the underlying exemptions at issue in

8   this case, namely, Exemptions (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and

9   (b)(7)(F), to protect the FOIA-exempt portions of the responsive records within the pending investigative

10  files.[5]  *See* ECF No. 42 at 15-24.  Because the FBI appropriately asserted Exemption (b)(7)(A), the Court

11  does not need to engage in any analysis of the underlying exemptions.  In an abundance of caution,

12  however, the FBI also addresses the underlying exemptions.

13         While the CIR challenges the FBI's assertion of each of the asserted underlying exemptions, it

14  generally does not dispute that the underlying exemptions may apply.  Instead, The CIR argues that the

15  Second Seidel Declaration does not contain sufficient information to justify the assertions.  Pl. Br.

16  at 15-25.  In effect, The CIR is asking the Court—**for the fourth time**—to order the FBI to produce a

17  detailed, document-by-document *Vaughn* index.  *See* ECF No. 14 (The CIR asking the Court to require

18  the FBI to prepare a *Vaughn* index in the initial case management conference statement); ECF No. 17

19  (The CIR seeking a *Vaughn* index in a further case management conference statement); ECF No. 18 (The

20  CIR asking the Court to order the FBI to prepare a *Vaughn* index in The CIR's opposition to the motion

21  to bifurcate).  However, as the FBI has repeatedly observed, *Vaughn* indices are particularly ill-suited to

22  Exemption (b)(7)(A) cases like this, and forcing the FBI to provide additional information would destroy

23  the interests that Exemption (b)(7)(A) is intended to protect.  *See* ECF Nos. 14, 17, 20.

24

25  [5]  The FBI withheld the non-public source documents and information in full pursuant to
    Exemption (b)(7)(A).  To the extent The CIR's brief implies that the FBI withheld 24,000+ documents in
26  full on the basis of the separate underlying exemptions, any such characterization is incorrect.  *See, e.g.*,
    Pl. Br. at 19 ("In any event, it is unlikely that all 24,000+ pages are so replete with specific information
27  revealing intelligence sources and methods to require withholding.").  As the FBI's motion makes clear,
    the FBI asserted the underlying exemptions "***to protect the FOIA-exempt portions*** of the responsive
28  records within the pending investigative files."  ECF No. 42 at 15 (emphasis added).

DEFENDANT'S REPLY ISO MSJ AND CROSS-OPP. TO PLAINTIFF'S CROSS-MSJ
NO. 19-cv-4541 LB

The Ninth Circuit has observed in a factually analogous case that "a *Vaughn* index of the documents here would defeat the purpose of Exemption 7(A). It would aid Lewis in discovering the exact nature of the documents supporting the government's case against him earlier than he otherwise would or should." *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987). District and appellate courts across the country have come to same conclusion. *See, e.g.*, *Solar Sources v. United States*, 142 F.3d 1033, 1040 (7th Cir. 1998) ("[I]n many Exemption 7(A) cases, provision of a *Vaughn* index would itself disclose much of the information that the Exemption is intended to protect."); *Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987) ("Provision of the detail which a satisfactory *Vaughn* Index entails would itself probably breach the dike."); *In re Department of Justice*, 999 F.2d 1302, 1311 (8th Cir. 1993) ("In short, we will not allow the cure, Exemption 7(A), to 'become the carrier of the disease.'") (quoting *Curran*, 813 F.2d at 475); *Kacilauskas v. DOJ*, 565 F. Supp. 546, 549 (N.D. Ill. 1983) ("[T]his Court sees no value--and potential harm--in compelling DOJ preparation of a *Vaughn* index. Its document-specific information would create the very risks Exemption 7(A) was intended to guard against."); *Int'l Union of Elevator Constructors Local 2 v. United States Dep't of Labor*, 747 F. Supp. 2d 976, 982 (N.D. Ill. 2010) ("Compelling the production of a *Vaughn* index could also effectively defeat the very purpose of Exemption 7(A)" because "production of a *Vaughn* index at this time could compromise the Department of Labor's pending investigation"); *Wilson v. United States Dep't of the Treasury*, No. 15 C 9364, 2016 U.S. Dist. LEXIS 185182, at *27 (N.D. Ill. Oct. 12, 2016) (same); *Greenberger v. IRS*, 283 F. Supp. 3d 1354, 1373 (N.D. Ga. 2017) ("Notably, the agency is not always required to provide a *Vaughn* index to assert exemption 7A, for the same reasons it is permitted to identify categories of documents: compiling a *Vaughn* index might reveal the very information the government is trying to protect about its ongoing investigation.").

This is, above all, an Exemption (b)(7)(A) case, and the FBI cannot prejudice its pending investigation and the ongoing enforcement proceedings against Mr. Wamang by providing a public, document-by-document, line-by-line roadmap of the types, sources, and content of information it has assembled in its investigative files. Thus, the FBI supported its underlying exemption assertions through the Second Seidel Declaration, which expressly noted:

In the following paragraphs, the FBI justifies its application of these underlying Exemptions, to the extent public disclosure and discussion of the applicable Exemptions will not adversely affect the active, ongoing criminal investigations in this case by somehow revealing the nature, scope, focus, and conduct of the investigations.  At this time, public disclosure of more detailed information on the application of exemptions would undermine the very interests the FBI seeks to protect through its assertion of Exemption (b)(7)(A).  The FBI can provide additional explanation *in camera ex parte* upon the Court's request.

ECF No. 42-1 ¶ 59.  The CIR's quest for more specific information than that provided in the Second Seidel Declaration "would defeat the purpose of Exemption 7(A)."  *Lewis*, 823 F.2d at 380.  The Court should not permit this to happen.

Finally, the lack of specificity in the Second Seidel Declaration is the unfortunate result of The CIR's own litigation choices in this case.  The CIR refused to bifurcate these proceedings and instead forced the FBI to litigate all of the underlying exemptions at the same time as Exemption (b)(7)(A).  ECF No. 23.  As discussed above, the FBI cannot provide additional information regarding the underlying exemptions without undermining the interests it seeks to protect through Exemption (b)(7)(A).  ECF No. 42-1 ¶ 59.  If these proceedings had been bifurcated, the FBI might have been able to provide additional information to support the underlying exemption claims, assuming, *arguendo*, the Court rejected the FBI's Exemption (b)(7)(A) claims.  That is not the procedural posture of this case, however, and the FBI's ability to investigate Mr. Wamang and bring him to justice should not be prejudiced as a result of The CIR's litigation choices in this FOIA case.

## IV.    *In Camera* Review Is Neither Appropriate Nor Necessary, But The FBI Is Prepared To Provide The Court With Any Records It May Wish To Review

Citing a mélange of out-of-circuit law, The CIR asks the Court to undertake an *in camera* review of 24,000 pages of records (or some unidentified subset thereof).  Pl. Br. at 9.  Such a judicially burdensome review is not appropriate under Ninth Circuit law and is not justified under the facts of this case.  However, to the extent the Court wishes to review any documents, the FBI is prepared to provide them for *in camera*, *ex parte* review.  ECF No. 42-1 ¶ 59.

In the Ninth Circuit, "the district court may, *in its discretion*, examine the disputed documents in camera in order to make a first-hand determination of their exempt status" if the government's affidavits

are "too generalized . . . ." *Lewis*, 823 F.2d at 378 (quotation marks and citation omitted; emphasis in original).  However, the exemptions to FOIA are intended "to relieve the district courts of potentially onerous *in camera* inspections of documents."  *MacPherson v. IRS*, 803 F.2d 479, 482 (9th Cir. 1986).  Therefore, "district courts need not and should not make in camera inspections where the government has sustained its burden of proof on the claimed exemption by public testimony or affidavits."  *Lewis*, 823 F.2d 378 (citing *Pollard v. FBI*, 705 F.2d 1151, 1153-54 (9th Cir. 1983) (government testimony and detailed affidavits are the "preferred alternative" to in camera review).  *In camera* inspection "should not be resorted to lightly."  *Id.*

Here, the FBI has "sustained its burden of proof on the claimed exemption" through the Second Seidel Declaration.  *Id.*  The application of Exemption (b)(7)(A) in litigation involves a three-part process requiring the government to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and to explain why release of documents in each category would interfere with pending or prospective law enforcement proceedings. *Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986); *see also NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978) (allowing categorical application for Exemption 7(A)).  That is precisely what the FBI has done in this case, and the FOIA does not require any more.  ECF No. 42-1 ¶ 52.  As such, the court "need not and should not make in camera inspections . . . ."  *Lewis*, 823 F.2d at 378. Similarly, to the extent it is even necessary for the Court to reach the issue—and it is not—the Second Seidel Declaration describes the bases for asserting all of the underlying exemptions.  *See generally* ECF No. 42-1.  Again, the FBI has adequately asserted the underlying exemptions, and *in camera* inspection "should not be resorted to lightly."  *Lewis*, 823 F.2d at 378.

**V.    The Government Has Demonstrated Foreseeable Harm**

The CIR's assertion that "the FBI . . . is unable to show that disclosure will cause any foreseeable harm" is simply not true.  Pl. Br. at 11.  Indeed, the Second Seidel Declaration and the Maisel Declaration both describe in significant detail the "multitude of harms" that premature release of the information withheld under Exemption (b)(7)(A) would cause, including:  (1) compromising the investigation into Mr. Wamang by disclosing its scope and direction; (2) disclosing the identities of cooperating witnesses;

(3) putting classified information at risk; (4) disclosing investigative details that could allow Mr. Wamang to escape prospective prosecution, counteract evidence, or possibly intimidate or harm witnesses or law enforcement officials; (5) releasing investigative details could allow unrelated third parties to interfere with any future prosecution through harassment, intimidation, and creation of false evidence in an attempt to contradict facts uncovered in the investigation; and (6) revealing investigative details could lead to the identification of sources of information, witnesses, potential witnesses, law enforcement personnel and other individuals associated with the investigation who could then be targeted for intimidation and/or physical harm. ECF No. 42-2 ¶ 11; *see also* ECF No. 42-1 ¶¶ 55-58 (same). Thus, the FBI has specifically identified a "multitude" of foreseeable harms were it forced to release this information.

Further, The CIR's efforts to undermine the FBI's foreseeable harm showing by pointing to third-party, public information do not withstand scrutiny. There is a stark difference between widespread media speculation regarding a purported set of facts and official acknowledgement from the FBI that those specific facts have been investigated (or not investigated) or that they are true (or not true). As the *Afshar* Court noted in the parallel international diplomacy context:

> even if a fact -- such as the existence of such a liaison -- is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security. Unofficial leaks and public surmise can often be ignored by foreign governments that might perceive themselves to be harmed by disclosure of their cooperation with the CIA, but official acknowledgment may force a government to retaliate.

*Afshar*, 702 F.2d at 1130-31; *see also Military Audit Project v. Casey*, 656 F.2d 724, 743-45 (D.C. Cir. 1981) (lack of authoritative acknowledgment can leave foreign intelligence services guessing as to whether information is true). Here, forced release of information in the FBI's pending investigative files that also happens to be public through third-party disclosures could allow Mr. Wamang and/or his associates to map the FBI's investigative angle, including who the FBI has spoken with and the types of information and leads that the FBI has focused on and developed. And, release of the FBI's confidential investigative files—even if similar information has already been a topic of speculation in the public sphere—could also allow Mr. Wamang and/or his associates to identify any holes in the FBI's

investigation, thereby permitting them to craft alibis and further bury incriminating leads.  In short, release of this information, whether publicized by third parties or not, would cause foreseeable harm to the FBI.

Further, contrary to The CIR's suggestion, the FBI has demonstrated concrete foreseeable harm as to each of the underlying exemptions.  *See, e.g.*, ECF No. 42-1 ¶¶ 65-66, 69-70, 74, 75, 77, 81, 82, 84, 87, 89, 91, 96-101, 103-104, 106-107, 109-112, 114-115, 119-153, 155.

**VI.    The FBI Segregated And Released All Segregable Portions**

The CIR contends that the FBI has failed to explain "with specificity" the bases for its determination that it could not release any other material without jeopardizing further investigation and/or prosecutive efforts.  Pl. Br. at 12.  But, The CIR misstates the FBI's legal burden since there is no requirement for an agency to identify "with specificity" the bases for its segregability analyses.  Instead, an "agency can meet this burden by providing the district court with a reasonably detailed description of the withheld material and 'alleging facts sufficient to establish an exemption.'"  *Hamdan v. United States DOJ*, 797 F.3d 759, 779 (9th Cir. 2015) (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)); *see also McClanahan v. United States DOJ*, 204 F. Supp. 3d 30, 56 (D.D.C. 2016) ("The agency may provide sufficient justification by describing the materials withheld, the exemption under which they were withheld, and an affidavit attesting that 'it released all segregable material.'"); *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination").  The Second Seidel Declaration easily makes this showing, and the FBI has, therefore, established that it appropriately released all segregable material.  ECF No. 42-1 ¶¶ 55, 58, 156; *see also* Third Seidel Decl. ¶¶ 10-11.  Indeed, The CIR's insistence on a showing "with specificity" is not only legally unsupported, but it is also inappropriate in this Exemption (b)(7)(A) case—again, if the FBI were forced to make such a showing, it "would defeat the purpose of Exemption 7(A)."  *Lewis*, 823 F.2d at 380; *see also supra* Part III.

Moreover, The CIR's segregability arguments are based on conclusory—and incorrect— speculation.  As the D.C. Circuit has held, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some

"quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, the only "evidence" that The CIR proffers is speculation that "disclosable material, such as the Indonesian court records," should have been segregated and released. Pl. Br. at 12 (quotation marks omitted). But, the FBI has not withheld any identified public Indonesian court records in this case; instead, the only reference to court records in the Second Seidel Declaration are "Non-Public Court Documents . . . that have been filed with a court or otherwise made part of the non-public court record." ECF No. 42-1 ¶ 53(o). As such, the "quantum of evidence" supplied by The CIR is incorrect, and The CIR has done nothing to call the FBI's segregability analysis into question.[6] *McClanahan*, 204 F. Supp. 3d at 56.

## VII. The CIR's Briefing Improperly Includes Allegations Of Wrongdoing That Are Unresponsive To The FOIA Request At Issue In This Lawsuit

Finally, The CIR's brief includes a significant digression about a tangentially related FBI leak investigation, ostensibly to show that the FBI engaged in some wrongdoing regarding the "underlying activities." Pl. Br. at 7, 9, 23. However, as the Declaration of Raymond Bonner makes clear, this purported leak investigation was "prompted" by Mr. Bonner's reporting; the Bonner Declaration does not contend that the leak investigation itself was part of the FBI's investigation into the deaths of Ricky Lynn Spier and Leon Edwin "Ted" Burgon and/or Mr. Wamang. *See* ECF No. 45-3 ¶¶ 7-20. Indeed, documents related to the leak investigation are not responsive to the FOIA request at issue in this lawsuit, which The CIR characterizes as seeking "[a]ll records . . . concerning the death" of Mr. Spier and Mr. Burgon and "all records relating to the Indonesian citizen, Anthonius Wamang, in connection to the attack on August 31, 2002." Pl. Br. at 7. The CIR's efforts to inject charged allegations of wrongdoing regarding conduct that is not responsive to the FOIA request at issue in this lawsuit are improper and should be summarily rejected.

---

[6] The CIR also interprets the FBI's motion as "implying that the work-product doctrine covers all the content, so no segregability analysis is required." Pl. Br. at 12. This is a strained and incorrect interpretation of the plain language of the FBI's brief, which is clearly limited to documents which are covered by the attorney work-product privilege. *See* ECF No. 42 at 25.

1 | **VIII.  Conclusion**

2 |      For the foregoing reasons, the Court should grant the FBI's motion for summary judgment and

3 | deny The CIR's cross-motion for summary judgment.

4 | DATED:  December 3, 2020                      Respectfully submitted,

5 |                                              DAVID L. ANDERSON
                                                 United States Attorney
6 |
                                                  */s/ Jevechius D. Bernardoni*
7 |                                              JEVECHIUS D. BERNARDONI
                                                 Assistant United States Attorney
8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |